Case No. 24-13978-G

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

_____

LIL' JOE RECORDS, INC.,

*Plaintiff-Appellant*,

v.

RAVEN ROSS, CHRISTOPHER WONG WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON AND LUTHER CAMPBELL,

*Defendants-Appellees*

_____

Appeal from the United States District Court
for the Southern District of Florida
Honorable Darrin P. Gayles

_____

**APPELLEES' ANSWER BRIEF**

_____

Scott Alan Burroughs
  *Lead Counsel*
David M.S. Jenkins
**DONIGER / BURROUGHS**
247 Water Street, First Floor
New York, New York 10038
scott@donigerlawfirm.com
Telephone: (310) 590-1820

Joel B. Rothman
Angela M. Nieves
**SRIPLAW, P.A.**
21301 Powerline Road, Ste 100
Boca Raton, FL 33433
Joel.Rothman@sriplaw.com
Telephone: (561) 404-4350

*Counsel for Defendants-Appellees*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Respondents submit this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this review:

1. Burroughs, Scott, Esq. — Counsel for Defendants/Appellees

2. Campbell, Luther — Defendant/Appellee

3. Daniel, William Aaron, Esq. — Counsel for Plaintiff/Appellant

4. Doniger / Burroughs — Counsel for Defendants/Appellees

5. Gayles, Hon. Judge Darrin P. — District Court Judge

6. Jenkins, David, Esq. — Counsel for Defendants/Appellees

7. Kula, Elliot B., Esq. — Counsel for Plaintiff/Appellant

8. Kula & Associates, PA — Counsel for Plaintiff/Appellant

9. Lil' Joe Records, Inc. — Plaintiff/Appellant

10. Nieves, Angela Maria, Esq. — Counsel for Defendants/Appellees

11. Orshan, Paul L., Esq. — Counsel for Plaintiff/Appellant

12. Ray, Leterius — Defendant/Appellee

13. Ross, Mark — Defendant/Appellee

14. Ross, Raven — Defendant/Appellee

15. Rothman, Joel Benjamin, Esq. — Counsel for Defendants/Appellees

16. SRIPLAW, P.A. — Counsel for Defendants/Appellees

17. Torres, Hon. Magistrate Judge Edwin G — Magistrate Judge

18. Trechsel, Frank R., Esq. — Counsel for Defendants/Appellees

19. Weinberger, Joseph — President and Owner of Lil' Joe Records, Inc.

20. Wolfe Law Miami, P.A. — Counsel for Plaintiff/Appellant

21. Wolfe, Richard, Esq. — Counsel for Plaintiff/Appellant

22. Wong Won, Anissa — Defendant/Appellee

23. Wong Won, Christopher, Jr. — Defendant/Appellee

24. Wong Won, Roderick —Defendant/Appellee

Respectfully submitted,

Date: June 9, 2025                    By:    */s/ Scott Alan Burroughs*
                                             Scott Alan Burroughs, Esq.
                                             DONIGER / BURROUGHS

## ORAL ARGUMENT STATEMENT

Appellee believes oral argument will be helpful to the court in this case and respectfully requests oral argument on the issues raised herein.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ........................................................................ ii

ORAL ARGUMENT STATEMENT .............................................................. iv

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................1

STATEMENT OF THE CASE.........................................................................2

STANDARD OF REVIEW .............................................................................6

SUMMARY OF THE ARGUMENT ..................................................................7

ARGUMENT ...............................................................................................8

    A.    2 Live Crew's §203 rights were not lost in bankruptcy or via
settlement agreements ..........................................................................8

        1.    §203 rights are inalienable ............ **Error! Bookmark not defined.**

        2.    Section 203 rights are personal ..... **Error! Bookmark not defined.**

        3.    The §203 rights at issue were unvested at the time of bankruptcy
and thus not part of any bankruptcy estate... **Error! Bookmark not
defined.**

        4.    The Section 203 rights were never identified as part of any
bankruptcy estate and are excluded by non-bankruptcy law .........27

        5.    The bankruptcy filings make no reference to and did not
incorporate the Section 203 rights. ................................................29

        6.    If the Section 203 rights ever entered the bankruptcy estates, they
were returned to 2 Live Crew once those bankruptcies ended
**Error! Bookmark not defined.**

    B.    2 Live Crew terminated the relevant agreement**Error! Bookmark not
defined.**

1. The evidence supported the verdict**Error! Bookmark not defined.**

2. A written agreement can confirm a prior oral agreement and need not specifically identify the prior oral agreement .........................34

3. The merger clause argument fails ................................................36

4. Lil Joe's arguments regarding the 1990 Agreement contradict its district court positions and fail.......................................................36

5. The Subject Albums were not works made for hire .....................38

   a. 2 Live Crew were not label employees................................39

   b. The 1990 Agreement is not a work for hire agreement.......44

C. Lil Joe lacks standing to challenge the 1990 Agreement or claim that the Subject Albums were works-for-hire ............................................50

1. Lil Joe cannot dictate an interpretation of the 1990 Agreement....50

2. Lil Joe cannot challenge 2 Live Crew's creation of the Subject Albums as independent contractors ................................................51

D. The termination notice identified the correct agreement ...................52

E. Judicial estoppel precludes Lil Joe's arguments ................................53

CONCLUSION ....................................................................................................55

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ........................................................................................................57

CERTIFICATE OF SERVICE .............................................................................58

## TABLE OF CITATIONS

**Page(s)**

<u>**Cases**</u>

*Allen v. Zurich Ins. Co.*,
   667 F.2d 1162 (4th Cir. 1982)............................................................ 55
*Am. Broad. Cos. v. Aereo*,
   134 S.Ct. 2498 (2014) ...................................................................... 9
*Baldwin v. EMI Feist Catalog, Inc.*,
   805 F.3d 18 (2d Cir. 2015).................................................................. 10
*Baldwin v. EMI Feist Catalog, Inc.*,
   2012 WL 13019195 (S.D. Fla. 2012)............................................ 11, 28
*Ballas v. Tedesco*,
   41 F. Supp. 2d 531 (D.N.J. 1999) ...................................................... 46
*Branca v. Mann*,
   2012 WL 3263610 (C.D. Cal. 2012).............................................. 29, 30
*Brown v. Latin Am. Music Co.*,
   498 F.3d 18 (1st Cir.2007) ................................................................ 48
*Brown-Thomas v. Hynie*,
   441 F. Supp. 3d 180 (D.S.C. 2019)................................................ 13, 19
*Bryant v. Gordon*,
   483 F.Supp.2d 605 (N.D.Ill.2007) ...................................................... 30
*Calderon v. U.S. Bank Nat'l Ass'n As Tr. for SG Mortg. Sec. Tr. 2006-fre2 Asset*
   *Backed Certificates Series 2006-fre2*,
   860 F. App'x 686 (11th Cir. 2021) .................................................... 26
*Camp v. St. Paul Fire & Marine Ins. Co.*,
   616 So. 2d 12 (Fla. 1993) .................................................................. 25
*CBS Broad., Inc. v. EchoStar Commc'ns Corp.*,
   2003 WL 27387389 (S.D. Fla. 2003).................................................. 51
*CENAPS Corp. v. Cmty. of Christ*,
   371 F. Supp. 3d 1024 (M.D. Fla. 2019)................................................ 8
*Chaney v. City of Orlando, Fla.*,
   483 F.3d 1221 (11th Cir. 2007)........................................................... 6
*City of Chicago, Illinois v. Fulton*,
   592 U.S. 154 (2021) ........................................................................ 20

*Clancy*,
   2021 WL 488683...................................................................... 45
*Classic Media, Inc. v. Mewborn*,
   532 F.3d 978 (9th Cir. 2008)......................................... 9, 10, 17
*Cleveland v. Home Shopping Network, Inc.*,
   369 F.3d 1189 (11th Cir. 2004)...................................... 39
*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) .............................................. 40, 45, 46
*Connecticut Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) ................................................... 10
*Cook v. Baca*,
   512 Fed.Appx. 810 (10th Cir.2013)............................ 22
*Cooley v. Penguin Grp. (USA) Inc.*,
   31 F. Supp. 3d 599 (S.D.N.Y. 2014)........................ 44
*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
   747 F. App'x 3 (2d Cir. 2018) ................................. 43
*Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc.*,
   2008 WL 299024 (S.D. Fla. 2008)........................... 34
*DeNadai v. Preferred Cap. Markets, Inc.*,
   272 B.R. 21 (D. Mass. 2001) ................................... 31
*Doe v. Celebrity Cruises*,
   394 F.3d 891 (11th Cir. 2004).................................. 6
*Eason v. PNC Bank, Nat. Ass'n*,
   617 F. App'x 942 (11th Cir. 2015) .......................... 37
*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,
   697 F.2d 27 (2nd Cir.1982)...................................... 50
*Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*,
   304 F.3d 753 (7th Cir. 2002).................................... 15
*Fred Ahlert Music Corp. v. Warner/Chappell Music, Inc.*,
   155 F.3d 17 (2d Cir.1998)........................................ 10
*Great S. Homes, Inc. v. Johnson & Thompson Realtors*,
   797 F. Supp. 609 (M.D. Tenn. 1992).......................... 50
*Harmon v. Williams*,
   596 So.2d 1139 ......................................................... 24
*Heimerdinger v. Collins*,
   2009 WL 1743764 (D. Utah 2009) .......................... 44
*Henry v. Casey*,
   682 S.W.3d 171 (Tenn. Ct. App. 2023)................ 19, 21

*Hillis Motors v. Haw. Auto. Dealers' Ass'n (In re Hillis Motors),*
   997 F.2d 581 (9th Cir. 1993)................................................................ 14
*Horror Inc. v. Miller,*
   15 F.4th 232 (2d Cir. 2021)..................................................... 38, 40, 45
*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.,*
   70 F.3d 96 (11th Cir. 1995)................................................... 34, 50, 52
*In re Belize Airways, Ltd.,*
   5 B.R. 152 (Bankr. S.D.Fla. 1980)....................................................... 19
*In re Blackburn,*
   448 B.R. 28 (Bkrtcy.D.Idaho 2011)..................................................... 18
*In re Bracewell,*
   454 F.3d 1234 (11th Cir. 2006)........................................................... 25
*In re Brand,*
   251 B.R. 912 (Bankr. S.D.Fla.2000)............................................... 18, 20
*In re Chattanooga Wholesale Antiques, Inc.,*
   930 F.2d 458 (6th Cir.1991)................................................................ 31
*In re Dittmar,*
   618 F.3d 1199 (10th Cir. 2010)..................................................... 24, 25
*In re D'Lites of Am., Inc.,*
   66 B.R. 558 (Bankr. N.D. Ga. 1986) ................................................... 19
*In re Ernst,*
   Minn. 1985 45 Bankr. 700 .................................................................. 15
*In re Foreman,*
   378 B.R. 717 (Bankr. S.D. Ga. 2007) .................................................. 26
*In re Freeman,*
   664 B.R. 334 (Bkrtcy.N.D.Miss., 2024) .............................................. 20
*In re Gucci,*
   202 B.R. 686 (Bankr. S.D.N.Y. 1996) ................................................. 22
*In re Hedged–Investments Associates, Inc.,*
   84 F.3d 1281 (10th Cir.1996)............................................................. 22
*In re Hilsen,*
   405 B.R. 49 (Bankr. E.D.N.Y. 2009)............................................... 18, 27
*In re Icarus Holding, LLC,*
   391 F.3d 1315 (11th Cir. 2004)..................................................... 25, 26
*In re Jahrling,*
   816 F.3d 921 (7th Cir. 2016)............................................................. 21
*In re K.D. Co., Inc.,*
   254 B.R. 480 (B.A.P. 10th Cir. 2000) ................................................. 15

*In re Lawton*,
  261 B.R. 774 (Bankr. M.D. Fla. 2001) ........................................ 23
*In re Linsenmeyer*,
  92 F. App'x 101 (6th Cir. 2003) .......................................... 15, 30
*In re Little & Ives Co.*,
  262 F.Supp. 719 (S.D.N.Y.1966) ............................................. 18
*In re Martin*,
  490 F.3d 1272 (11th Cir. 2007) ............................................. 15
*In re McCourt*,
  12 B.R. 587 (Bankr. S.D.N.Y. 1981) .................................. 17, 18, 20
*In re McKay*,
  143 F. 671 (W.D.N.Y. 1906) ................................................. 16
*In re Meehan*,
  102 F.3d 1209 (11th Cir. 1997) ............................................. 27
*In re Miller*,
  441 B.R. 154 (Bankr. S.D. Fla. 2010) .................................... 20, 24
*In re Moore*,
  907 F.2d 1476 (4th Cir. 1990) .............................................. 27
*In re Napster, Inc.* Copyright Litig.,
  191 F.Supp.2d 1087 (N.D. Cal. 2002) ....................................... 21
*In re Seminole Walls & Ceilings Corp.*,
  366 B.R. 206 (Bankr. M.D. Fla. 2007) ...................................... 21
*In re Wise*,
  346 F.3d 1239 (10th Cir. 2003) ............................................. 17
*In re Witko*,
  374 F.3d 1040 (11th Cir.2004) ........................................... 21, 22
*In re: Bilzerian*,
  264 B.R. 726 (Bankr. M.D. Fla. 2001) ...................................... 13
*ITOFCA, Inc., v. Mega Trans Logistics, Inc.*,
  322 F.3d 928 (7th Cir. 2003) ............................................... 35
*Jetton v. University of the South*,
  208 U.S. 489 (1908) ........................................................ 18
*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
  617 F.3d 1146 (9th Cir. 2010) ............................................. 52
*Koch Foods of Alabama, LLC v. Gen. Elec. Cap. Corp.*,
  303 F. App'x 841 (11th Cir. 2008) ......................................... 36
*Korman v. HBC Fla., Inc.*,
  182 F.3d 1291 (11th Cir. 1999) ............................................ 8, 9

*Korman v. Iglesias*,
  2018 WL 4410226 (S.D. Fla. 2018)....................................... 54
*Larson v. One Beacon Ins. Co.*,
  2015 WL 1539173 (D. Colo. 2015) ...................................... 22
*Latimer v. Roaring Toyz, Inc.*,
  601 F.3d 1224 (11th Cir. 2010)............................................. 6
*Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*,
  777 F.3d 678 (4th Cir. 2015)............................................... 19
*Lil' Joe Recs., Inc. v. Ross*,
  752 F. Supp. 3d 1287 (S.D. Fla. 2024) ............... 10, 17, 19, 30
*Lucas v. Limbach*,
  35 Ohio St. 3d 71, 518 N.E.2d 944 (1988) ......................... 15
*Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*,
  128 F.3d 872 (5th Cir. 1997).............................................. 38
*Lyrick Studios, Inc. v. Big Idea Prods., Inc.*,
  420 F.3d 388 (5th Cir. 2005)......................................... 35, 51
*Marvel Characters, Inc. v. Kirby*,
  726 F.3d 119 (2d Cir. 2013)............................................... 43
*Matthew Bender & Co., Inc. v. West Pub. Co.*,
  240 F.3d 116 (2d Cir. 2001)................................................. 9
*McGinnis*,
  817 F.3d................................................................................ 37
*Mills during bankruptcy proceedings." Ross*,
  752 F. Supp. ................................................................... 12, 17
*Mills Music, Inc. v. Snyder*,
  469 U.S. 153 (1985)........................................... 9, 11, 12, 16
*Montgomery v. Noga*,
  168 F.3d 1282 (11th Cir. 1999)........................................... 32
*Muller v. Walt Disney Prods.*,
  871 F. Supp. 678 (S.D.N.Y. 1994)....................................... 43
*Palmer v. Travelers Ins. Co.*,
  319 F.2d 296 (5th Cir.1963)................................................ 25
*Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*,
  834 F.2d 208 (1st Cir. 1987) .............................................. 55
*Playboy Enters., Inc. v. Dumas*,
  53 F.3d 549 (2d Cir. 1995).............................................. 45, 46
*Radio Television Espanola, S.A. v. New World Entertainment, Ltd.*,
  183 F.3d 922 (9th Cir.1999)........................................... 34, 35

*Ray Charles Found. v. Robinson*,
  795 F.3d 1109 (9th Cir. 2015)......................................................... 18
*Reed v. City of Arlington*,
  650 F.3d 571 (5th Cir. 2011)........................................................... 31
*Rey v. Guy Gannett Pub. Co.*,
  766 F. Supp. 1142 (S.D. Fla. 1991) ................................................ 39
*Rodrigue v. Rodrigue*,
  218 F.3d 432 (5th Cir. 2000)........................................................... 23
*Sender v. Simon*,
  84 F.3d 1299 (10th Cir.1996)........................................................... 22
*Stewart v. Abend*,
  495 U.S. 207 (1990) ........................................................... 9, 10, 13
*Stillwater Ltd. v. Basilotta*,
  2017 WL 2906056 (C.D. Cal. 2017).................................... 16, 19, 21
*Taft v. O'Connell (In re Taft)*,
  184 B.R. 189 (E.D.N.Y.1995)......................................................... 27
*Thompkins v. Lil' Joe Records, Inc.*,
  476 F.3d 1294 (11th Cir. 2007)....................................................... 14
*Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*,
  595 U.S. 178 (2022) ......................................................................... 9
*United Kingdom v. United States*,
  238 F.3d 1312 (11th Cir. 2001)....................................................... 53
*United States v. Davis*,
  370 U.S. 65 (1962) .......................................................................... 17
*Velis v. Kardanis*,
  949 F.2d 78 (3d Cir. 1991).............................................................. 27
*Vergara Hermosilla v. The Coca-Cola Co.*,
  717 F. Supp. 2d 1297 (S.D. Fla. 2010) ........................................... 46
*Vetter v. Resnik*,
  2024 WL 3405556 (M.D. La. 2024) ................................................ 29
*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003)......................................................... 48
*Weinman v. Graves (In re Graves)*,
  609 F.3d 1153 (10th Cir.2010)........................................................ 21
*Woods v. Bourne Co.*,
  60 F.3d 978 (2d Cir. 1995).............................................................. 38
*Wornick v. Gaffney*,
  544 F.3d 486 (2d Cir. 2008)............................................................ 24

## Statutes

11 U.S.C. § 541 ...................................................................... 17, 26
11 U.S.C. § 542(a) ....................................................................... 20
11 U.S.C. § 1141(b) ..................................................................... 30
17 U.S.C. §204 ......................................................................... 34, 36
17 U.S.C. § 101 ............................................................ 38, 39, 45, 46
17 U.S.C. § 201(e) ....................................................................... 16
17 U.S.C. § 203 .....................................................................Passim
17 U.S.C. § 203 (a)(1) ............................................................. 16, 29
17 U.S.C. § 203(b)(2) ................................................................... 22
17 U.S.C. § 203(b)(5) ................................................................... 28
28 U.S.C. § 1481 ......................................................................... 19
Bankruptcy Code § 541(d) ............................................................ 23
§101(2) ........................................................................ 45, 46, 47, 48
§201 ...................................................................................... 16
§203(a) ............................................................................... 28, 54
§203(a)(1)-(2) ............................................................................. 8
§203(a)(3) ................................................................................. 8
§203(a)(5) ........................................................................ 10, 13, 16, 27
§204(a) ................................................................................. 34, 35
§541(a) .................................................................................... 21
§ 541(a)(1) ....................................................................... 22, 24, 25
§ 541(a)(5)(B) ............................................................................ 17
§ 541(c)(2) ............................................................................... 27

## Rules

Fed.R.Civ.P.50(b) ....................................................................... 37
FRAP 32(a)(5) ............................................................................ 57
FRAP 32(a)(6) ............................................................................ 57
FRAP 32(f) ............................................................................... 57
Rule 50 .................................................................................. 37

## Other Authorities

*Judicial Resistance to Copyright Law's Inalienable Right to Terminate Transfers*,
    33 Colum. J.L. & Arts 227 (2010) .............................................. 13

*Renegotiating the Copyright Deal in the Shadow of the "Inalienable" Right to Terminate*,
  62 Fla. L. Rev. 1329 (2010) ................................................................. 11

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1.    Whether the district court correctly determined that 2 Live Crew terminated the original copyright transfer for the albums at issue by exercising their 17 U.S.C. § 203 rights, and did not lose the ability to exercise those rights in bankruptcy.

2.    Whether there is a basis to disturb the jury's verdict that 2 Live Crew terminated the relevant transfer agreement and were not employees of the record label for purposes of recording the albums at issue.

**STATEMENT OF THE CASE**

Appellees Mark Ross ("Ross"),[1] Luther Campbell ("Campbell"), and Christopher Wong Won[2] ("Won") (collectively "2 Live Crew") represent the legal interests of three of the four members of the band 2 Live Crew. From 1986 to 1989, 2 Live Crew wrote and recorded five albums[3] ("Subject Albums"). Doc.277, 11:24-13:14; Doc.250-6. During that time, the 2 Live Crew members had an oral agreement when they went into the studio about how the rights, including copyrights, for those albums would be treated. Doc.277, 15:25-18:23, 23:18-28:16; Doc.300-1, 7:9-23, 34:8-18, 43:3-45:1. The parties performed under that oral agreement between 1986 and 1990. Doc.277, 20:23-21:3. Specifically, they recorded the Subject Albums, Campbell's label Luke Skyywalker Records, Inc. ("Skyywalker Records"[4]) released them, and the label split with the group the proceeds from the release of the Subject Albums. Doc.277, 17:17-24, 29:25-30:4. At no time between 1986 and 1990 did anyone challenge the validity of 2 Live

---

[1] Ross passed away during this litigation's pendency and his rights are now being represented by his daughter, Raven Ross.

[2] Wong Won passed away before this litigation and his rights are being enforced by his children, Anissa Wong Won, Christopher Wong Won, Jr., Roderick Wong Won, and Leterius Rey. They terminated the relevant grant of rights on behalf of the Estate of Christopher Wong Won.

[3] *The 2 Live Crew Is What We Are, Move Somethin', Move Somethin' (Clean), As Nasty As They Wanna Be,* and *As Clean As They Wanna Be*

[4] Luke Skyywalker Records was renamed Skyywalker Records (the entity that executed the 1990 Agreement), which was renamed Luke Records.

Crew's transfer of the copyrights in the Subject Albums to Skyywalker Records. Doc.277, 17:25-18:2.

In 1990, 2 Live Crew executed a written agreement with Skyywalker Records[5] memorializing the parties' oral transfer ("1990 Agreement"). Doc.250-1; Doc.277, 20:23-24:19; Doc.300-1, 43:3-45:1. The 1990 Agreement states an effective date of January 1, 1987, and was entered into in 1990 when the members of 2 Live Crew decided to memorialize their oral agreement in writing. Doc.250-1, 1. The 1990 Agreement provides that its initial one-year term could be extended by three additional contract terms upon notice from the label with no requirement that this notice be in writing. Doc.250-1, 1. Campbell, as owner of the label, orally exercised these options with 2 Live Crew each time they decided to record a new album, covering the period of 1986-1989. Doc.277, 24:20-26:8. It is the only written agreement in the record under which the Subject Albums could have been recorded and transferred.

Lil Joe Records, Inc. ("Lil Joe") has had the 1990 Agreement in its files since the early 2000s and, before this litigation, never took any steps to challenge its validity as a copyright transfer. Doc.277, 17:25-18:2; Doc.275, 120:5-121:7. Nor had Lil Joe's principal, Joe Weinberger ("Weinberger"), a former lawyer for

---

[5] The entity identified on the agreement is Skyywalker Records. Doc.250-1.

Campbell's label, ever claimed that the members of 2 Live Crew were label employees before this litigation. Doc.277, 34:22-35:1. In fact, no one ever claimed that 2 Live Crew were label employees until Weinberger did so in an attempt to gain an advantage in this litigation.

Skyywalker Records received and held the copyrights for the Subject Albums per the 1990 Agreement at all relevant times until it, along with Campbell, declared bankruptcy in 1995. Doc.277, 17:17-19. Lil Joe obtained the sound recording copyrights for the Subject Albums via an agreement reached with Skyywalker Records in that bankruptcy. Doc.277, 69:1-3.

On November 4, 2020, 2 Live Crew served a notice on Lil Joe and others terminating the original copyright grant for the Subject Albums to Skyywalker Records (the "Notice"). Doc.250-2. The Notice was served under 17 U.S.C. § 203, which allows an artist to terminate a transfer 35 years after it was made and reclaim their copyrights. The Notice provided a date of effective termination for each of the Subject Albums over 35 years from the respective date of publication and within the 5-year window beginning on December 1, 2021. Id. The Notice was recorded with the Copyright Office in compliance with §203. Id.

Lil Joe received the termination notice and filed the underlying lawsuit to challenge its validity. 2 Live Crew counterclaimed for a declaratory judgment that its §203 notice was valid. At summary judgment, the court rejected Lil Joe's

arguments that 2 Live Crew's members lost their §203 rights in bankruptcy or via settlement agreements, concluding that the rights were inalienable. Doc.210.

The case proceeded to trial, where Campbell and Ross testified that 2 Live Crew created the Subject Albums of their own accord without any outside creative control, that they operated under a verbal agreement transferring the copyrights in the albums to Skyywalker Records so they could be released to the public, and that the group then memorialized their transfer in writing through the 1990 Agreement. Doc.277, 16:9-17:3, 20:15-21:3; Doc.300-1, 7:20-8:12, 40:7-45:1. Weinberger testified that the 1990 Agreement was a "phony" and a "legal fraud" that Defendants fabricated (Doc.274, 221:15-222:25, 245:5-7; Doc.275, 119:1-121:7, 122:3-7), despite admitting that he had maintained the agreement in his record for decades and previously stating in a sworn affidavit that it was valid (Doc.275, 123:7-127:16). Weinberger further testified that a separate 1991 Agreement transferred the copyrights while also making the contradictory arguments that 2 Live Crew were employees and that the 1991 Agreement was a work-for-hire agreement covering the Subject Albums (Doc.274, 221:15-222:25; Doc.275, 122:17-25).

After reviewing all of the evidence presented, the jury concluded that 2 Live Crew were not employees of the label and that they transferred their copyrights as

indicated in the 1990 Agreement. The court and jury found thus found the termination valid under §203.

Lil Joe filed Rule 50(a) & (b) Motions, arguing, *inter alia*, that a 1991 agreement affected the transfer. Doc.284. The court rejected both motions, upheld the jury verdict, and entered judgment in Appellees' favor. Doc.305.

## STANDARD OF REVIEW

Review of summary judgment findings is "*de novo*, considering all the evidence and factual inferences in the light most favorable to the non-moving party." *Latimer v. Roaring Toyz, Inc*., 601 F.3d 1224, 1232 (11th Cir. 2010)(citation omitted). Review of Rule 50 orders is also *de novo*. *Doe v. Celebrity Cruises*, 394 F.3d 891, 902 (11th Cir. 2004) (citations omitted). A post-verdict Rule 50(b) motion may only be granted where "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007)(internal quotation and citation omitted).

## SUMMARY OF THE ARGUMENT

The district court correctly concluded that 2 Live Crew's §203 rights were not lost in bankruptcy. These rights are inalienable, personal to the artist or the artist's heir, and do not vest until 35 years after a copyright transfer is made.

The jury verdict properly found that 2 Live Crew terminated the relevant transfer. Indeed, all necessary parties to the 1990 Agreement agree that it covered the subject albums, and each was performed under it. The jury verdict also properly found that 2 Live Crew did not record the albums as employees and that those albums were not works-for-hire. Rather, all necessary parties agreed that 2 Live Crew created the subject albums as independent contractors, which is standard in the music industry.

The jury and court thus correctly concluded that 2 Live Crew properly terminated the 1990 Agreement and recaptured the copyrights to 2 Live Crew's first five albums. Lil Joe, after losing every argument before both judge and jury, now, tellingly and dramatically, changes course to proffer new arguments. But none have merit and the court's summary judgment order and the jury's verdict should be affirmed.

## ARGUMENT

2 Live Crew properly terminated the copyright transfer for and reclaimed their copyrights in their first five albums per 17 U.S.C. §203, under which only "a copyright owner" or their heirs can terminate a copyright transfer "during a period of five years beginning at the end of thirty-five years from the date of the grant of the license." *CENAPS Corp. v. Cmty. of Christ*, 371 F. Supp. 3d 1024, 1028 (M.D. Fla. 2019); citing §203(a)(3); see §203(a)(1)-(2)(only an author or heir may terminate). The termination right applies to "any copyright transfer or license still in effect after 35 years, provided she exercises that right after 35 and before 40 years have elapsed." *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1295 (11th Cir. 1999)(citation omitted).

The court properly concluded upon summary judgment briefing that 2 Live Crew's §203 rights were inalienable and at trial the court and jury properly concluded that 2 Live Crew met the §203 requirements and reclaimed their copyrights.

### A.    2 Live Crew's §203 rights were not lost in bankruptcy or via settlement agreements

2 Live Crew did not alienate their §203 rights through any bankruptcy or settlement agreements. The Copyright Act states that §203 rights cannot be transferred and even if it didn't, the §203 rights are personal, had not vested at the

- 8 -

time of the relevant bankruptcies or settlements, and were never mentioned, let alone identified, in any settlement agreement or bankruptcy proceeding.

Interpreting §203 requires us to "follow the text of the statute." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P*., 595 U.S. 178, 184 (2022) (citation omitted). To the extent its language is general rather than specific, courts "apply [that] highly general language in light of the statute's basic purposes." *Am. Broad. Cos. v. Aereo,* 134 S.Ct. 2498, 2511 (2014) (applying the Copyright Act). The Copyright Act's "principal purpose" is to "encourage the origination of creative works by attaching enforceable rights to them." *Matthew Bender & Co., Inc. v. West Pub. Co*., 240 F.3d 116, 122 (2d Cir. 2001)(citations omitted). And the specific purpose of §203 "is to help authors, not publishers or broadcasters or others who benefit from the work of authors." *HBC Fla.*, 182 F.3d at 1296, *citing Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172–73 & n. 39 (1985) (termination right was intended "to relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work"). Copyrights, are by their "very nature incapable of accurate monetary evaluation prior to its exploitation." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 983-84 (9th Cir. 2008)(*citing* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 9.02, at 9–8, *quoted with approval in Stewart v. Abend*, 495 U.S. 207, 218–219 (1990)). Thus, this "process was intended to give an

- 9 -

author and his heirs a second chance to benefit from the fruits of his labors."
*Classic Media, Inc.,* 532 F.3d at 983. The Copyright Act's text and intent doom
this appeal.

### 1.    §203 rights are inalienable

Lil Joe presents no basis on which to disturb the court's conclusion that the
"right to terminate is "inalienable" for both authors and heirs." *Lil' Joe Recs., Inc.
v. Ross*, 752 F. Supp. 3d 1287, 1302 (S.D. Fla. 2024)("*Ross*"), *citing Abend*, 495
U.S. at 230 (*citing* 17 U.S.C. §§ 203, 304). This result inures because "§203 rights
"cannot be contracted away" via agreements reached in settlement or bankruptcy.
Id., quoting *Baldwin v. EMI Feist Catalog, Inc.,* 805 F.3d 18, 32 (2d Cir. 2015).

When the language of a statute is unambiguous, as it is here, the "judicial
inquiry is complete." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254
(1992). The Copyright Act, referring to terminable grants, unambiguously states
that the "[t]ermination of the grant may be effected **notwithstanding any
agreement to the contrary**, including an agreement to make a will or to make any
future grant." §203(a)(5)(emphasis added). This provision "provides an
**inalienable** termination right[,]" and provides no exceptions. *Abend*, 495 U.S. at
230; citing §203; *see also Fred Ahlert Music Corp. v. Warner/Chappell Music,
Inc.*, 155 F.3d 17, 24 (2d Cir.1998) (termination right "is designed to protect the
interests of authors and their heirs and to maximize their ability to exploit the value

of their [works] during the extended renewal term."); *Baldwin v. EMI Feist Catalog, Inc*., 2012 WL 13019195 at *2 (S.D. Fla. 2012) ("Congress created an inalienable right to terminate a prior grant of an interest in a copyright."), citing Lydia Pallas Loren, *Renegotiating the Copyright Deal in the Shadow of the "Inalienable" Right to Terminate*, 62 Fla. L. Rev. 1329, 1333-42 (2010). Lil Joe's claim that Campbell and Ross lost their §203 rights via agreements reached in bankruptcy or settlement is thus foreclosed by the text, as such agreements are the type of "agreements to the contrary" that the Act expressly states cannot deprive an artist of their §203 right.

The Supreme Court has already concluded that bankruptcy cannot divest an artist of their §203 rights. In *Mills*, a copyright holder "went into bankruptcy in 1929, and in 1932 the trustee in bankruptcy assigned the copyright to Mills." 469 U.S. at 156–57. There, even though "Mills had acquired ownership of the original copyright from the trustee in bankruptcy, **it needed the cooperation** of Snyder in order to acquire an interest in the 28-year renewal term." Id. at 157 (emphasis added). Like 2 Live Crew's members here, Snyder had transferred his copyrights to the record label. When a party entered an agreement to obtain those rights in bankruptcy proceedings, it did *not* also acquire the §203 rights. To the contrary, it *still needed* Snyder to cooperate in exercising those rights. Indeed, if Mills had also

obtained the §203 rights in bankruptcy, it would not "need[] the cooperation of Snyder" to obtain the rights. Id.

As the district court acknowledged, "the Supreme Court recognized that the author's heirs successfully exercised their termination right and caused the ownership of the copyright to revert *after the copyright was assigned to Mills during bankruptcy proceedings*." *Ross*, 752 F. Supp. at 1303 (emphasis by Court; internal quotations omitted), quoting *Mills*, 469 U.S. at 167. And at "no point did the Supreme Court or the lower courts find or take issue with the heirs exercising their post-bankruptcy termination rights." Id.

It matters not that Campbell and Ross declared bankruptcy as individuals because Campbell and Ross, like Snyder, transferred the copyrights in their music to the label *before* the bankruptcy proceedings. Skyywalker/Luke Records obtained Campbell and Ross's Subject Albums' copyrights before the bankruptcies and Lil Joe acquired those rights from Skyywalker/Luke Records (and not Campbell or Ross) via agreements reached during the bankruptcy. The §203 right was not transferred.

The Supreme Court highlighted that the §203 "right was expressly intended to relieve authors of the consequences of ill-advised and unremunerative grants" and concluded that the §203 right at issue had not been lost in bankruptcy. *Mills*, U.S. at 172–73 (footnote omitted); see also Peter S. Menell & David Nimmer,

*Judicial Resistance to Copyright Law's Inalienable Right to Terminate Transfers*, 33 Colum. J.L. & Arts 227, 227 (2010) ("For a century, Congress has sought to protect authors and their families by allowing them to grant their copyrights for exploitation and then, decades later, recapture those same rights.").

The Copyright Act, as applied by the Supreme Court, thus ""provides an **inalienable** termination right" for both authors and his or her statutory heirs." *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 191 (D.S.C. 2019)(emphasis added), quoting *Abend*, 495 U.S. at 230, citing 17 U.S.C. §§ 203, 304. The Supreme Court concluded in *Stewart* that those rights are inalienable and in *Mills*, that they do not transfer in bankruptcy. Bankruptcy proceedings thus cannot alienate the §203 right.

Lil Joe disputes the foregoing by arguing that agreements reached in bankruptcy are not agreements, citing a single case to argue that "initiating a bankruptcy proceeding under Federal law is ***not entering into an agreement***." App. Brief, pg. 26, citing §203(a)(5) (emphasis by Appellant); *In re: Bilzerian*, 264 B.R. 726, 733-34 (Bankr. M.D. Fla. 2001). But *Bilzerian* never mentions the word "agreement" and instead simply states, while addressing an improper stay motion, that Chapter 7's purpose is to "provide an honest debtor with a fresh start in exchange for the debtor's handing over to a trustee all of the debtor's non-exempt assets[.]" Id. at 733–34. Of course, one party providing something to another "in

- 13 -

exchange for" something is the very definition of an agreement. And the fact it provides a "fresh start" does not mean the agreements providing that fresh start are not agreements.

Courts routinely find agreements reached in bankruptcy to be agreements. Indeed, this Circuit, addressing the very Letter of Intent ("LOI") that was agreed to during the bankruptcy of Cambell and his label, and *which is at issue here* (Doc.1-3), easily concluded that the LOI was an "agreement," referring to it as "the agreement" in the decision. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1300 (11th Cir. 2007)("Under the agreement …").[6] The court there found that this agreement had been "negotiated in good faith and at arms'-length" and thus approved the agreement. Id. at 1301. This Circuit also found that the very same Joint Plan of Reorganization at issue here (Doc.250-15) was an agreement, as the parties "had tentatively agreed upon a Joint Plan of Reorganization[.]" Id. at 1300. Lil Joe is judicially estopped from claiming otherwise.

Although agreements reached in bankruptcy may need court approval, a bankruptcy "reorganization plan resembles a consent decree and therefore, should be construed basically as a contract." *Hillis Motors v. Haw. Auto. Dealers' Ass'n*

---

[6] The LOI even begins "the undersigned parties ***agree***…under the following terms and conditions…" Doc.1-3, 1(emphasis added).

*(In re Hillis Motors)*, 997 F.2d 581, 588 (9th Cir. 1993); see also *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002) ("A confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations."); see also *In re Linsenmeyer*, 92 F. App'x 101, 102–03 (6th Cir. 2003) ("Plan is to be construed as a contract[.]") (citation omitted). And they remain agreements despite being court-approved. *In re Martin*, 490 F.3d 1272, 1275–76 (11th Cir. 2007) ("bankruptcy court did not err in approving the settlement agreement because it did not fall below the lowest point in the range of reasonableness.")(citation omitted). Thus, Courts regularly acknowledge that a bankruptcy plan is an agreement. See *In re K.D. Co., Inc.*, 254 B.R. 480, 488 (B.A.P. 10th Cir. 2000) ("Questions as to whether a contract, such as the Confirmed Plan, is ambiguous are likewise reviewed de novo."); see also *Lucas v. Limbach*, 35 Ohio St. 3d 71, 72, 518 N.E.2d 944, 946 (1988)("plan is essentially a new and binding contract, sanctioned by the Court, between a debtor and his preconfirmation creditors."), quoting *In re Ernst* (D. Minn. 1985), 45 Bankr. 700, 702. And, tellingly, the Ross bankruptcy document is titled: "Settlement Agreement." See Doc.32-6, 2.

Thus, the agreements resolving the Ross and Campbell bankruptcies are agreements which would be void even if they did purport to transfer the §203 rights because the "[t]ermination of the grant may be effected notwithstanding any

- 15 -

agreement to the contrary[,]" and these bankruptcy agreements would be "agreements to the contrary." § 203(a)(5).

In a footnote, Lil Joe argues that 17 U.S.C. § 201(e)[7] and its interplay with bankruptcy law required the turnover of Campbell and Ross's §203 rights. This argument was waived as it was not made below. And it fails because while true that *copyright ownership* under §201 may be transferred in bankruptcy, copyrights are not inalienable; only the §203 right is. Even if the §203 right entered the estate, any transfer of it out of the estate to Lil Joe would be void per §203(a)(5).

This result acknowledges the "practical compromise" that furthers the "objectives of the copyright law" while also recognizing the practical issues involved. *Stillwater Ltd. v. Basilotta*, 2017 WL 2906056, at *3 (C.D. Cal. 2017), quoting *Mills*, 469 U.S. at 173 n. 39 (remaining citations omitted). The §203 rights, "being inalienable," do not pass to the trustee. See *In re McKay*, 143 F. 671, 673 (W.D.N.Y. 1906)(discussing inalienable trust). No court has ever found an artist lost their termination rights in bankruptcy, and there is no need to do so here.

### 2.    Section 203 rights are personal

The §203 right is personal because it can only be exercised by the author or their heir. 17 U.S.C. § 203 (a)(1). Section 541 expresses that the bankruptcy estate

---

[7] 17 U.S.C. § 201(e) appears nowhere in Lil Joe's summary judgment motion.

includes "all legal or equitable interests of the debtor in **property** as of the commencement of the case[,]" thus making clear that the estates hold only "the debtor's interests in **property**." *In re McCourt*, 12 B.R. 587, 589 (Bankr. S.D.N.Y. 1981)(emphasis added), quoting 11 U.S.C. § 541.

There is an important distinction between a "property interest," which would become part of the bankruptcy estate, and the personal *ability* to exercise a right to obtain a "property interest," and that distinction applies with force here to confirm that §203 rights do not become part of a bankruptcy estate. Id. at 589. A "personal right" is simply not an "interest in property" under § 541(a)(5)(B) and thus does not pass into the bankruptcy estate. *In re Wise*, 346 F.3d 1239, 1242 (10th Cir. 2003).

Indeed, "termination rights can be viewed as personal rights, separate and apart from underlying copyrights, because they exist for the specific purpose of "allow[ing] **an author**, if he is living, or his widow and children, if he is not, to recapture ... the rights that had previously been transferred to third parties."" *Ross*, 752 F. Supp. 3d at 1304 (alteration and emphasis by Court), quoting *Classic Media,* Inc, 532 F.3d at 983. And a personal right does not enter bankruptcy estates because, as a "personal statutory right," it is "not a property right." *Ross*, 752 F. Supp. at 1304-05, *quoting Wise*, 346 F.3d at 1242; *see also United States v. Davis*,

370 U.S. 65, 70 (1962) (Supreme Court recognized the obligation of post-divorce support as more of "personal liability" than a "property interest).

A right is "more closely akin to a personal right rather than a property right" when it can only be exercised by the holder. *In re Hilsen*, 405 B.R. 49, 60 (Bankr. E.D.N.Y. 2009), citing *In re Strohe*, N.Y.S.2d 164 (Sur. 2004) at *2 (citations omitted). And "a personal right, unlike a full property right, is generally not transferable." Id., citing *Jetton v. University of the South*, 208 U.S. 489, 500 (1908) (a tax-exempt university may not transfer its tax-exempt status to its lessee); *In re Little & Ives Co*., 262 F.Supp. 719, 722 (S.D.N.Y.1966) (a trustee may not transfer the debtor's contract right to use copyrighted material); *In re McCourt*, 12 B.R. at 590 (a trustee may not exercise the debtor's personal right of election to take his share of his deceased spouse's estate); *In re Brand*, 251 B.R. 912, 915–16 (Bankr. S.D.Fla.2000) (unexercised personal rights, unlike property rights, are not property of the estate); *In re Blackburn*, 448 B.R. 28, 36 (Bkrtcy.D.Idaho 2011) (right to choose one's attorney is a personal right exempt from a bankruptcy estate.)

No bankruptcy trustee has *ever* exercised – or even attempted to exercise – a §203 right. That is because a "**private right** and remedy are contemplated by the termination provisions; the statutes plainly accord authors and statutory heirs the ability to terminate prior grants and recapture copyright ownership for works that were not made for hire." *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1122

- 18 -

(9th Cir. 2015)(emphasis added), citing 17 U.S.C. §§ 203, 304(c). As no party other than the author or heir can exercise the right, it has no value to any bankruptcy estate. Thus, if the §203 rights entered the estate, they would be forfeited because any party that obtained the rights out of bankruptcy would be unable to exercise them. Under "28 U.S.C. § 1481, bankruptcy courts are courts of equity, and equity abhors a forfeiture." *In re D'Lites of Am., Inc*., 66 B.R. 558, 560 (Bankr. N.D. Ga. 1986), citing, e.g., *In re Belize Airways, Ltd.,* 5 B.R. 152, 154 (Bankr. S.D.Fla. 1980). The estates thus never obtained the §203 rights.

§203 "rights are personal to the author, as no other party may exercise them." *Ross*, 752 F. Supp. 3d at 1305, *citing Stillwater Ltd*., 2017 WL 2906056, at *3. Termination rights thus "[do] not implicate any disposal of property in the custody of a state probate court, but rather involve[ ] the 'personal rights and obligations of the parties." Id. (internal quotations omitted), *quoting Brown-Thomas*, 441 F. Supp. 3d at 214, *quoting Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 681 (4th Cir. 2015). And it follows that §203 rights "do not become a part of the bankruptcy estate because they are personal rights specifically created for the author, not property rights that can be transferred." Id.

The §203 right is a "personal right that" 2 Live Crew "may choose to exercise or not," and "such unexercised right cannot constitute an asset or property" of the estate. *Henry v. Casey*, 682 S.W.3d 171, 184 (Tenn. Ct. App.

- 19 -

2023), appeal denied (Oct. 13, 2023)(citations omitted). The trustee or a buyer of the bankruptcy estate's assets certainly cannot do so. Under "Florida law," a "personal right" is "not a property interest of the debtor, and thus, not property of the estate." *In re Miller*, 441 B.R. 154, 156 (Bankr. S.D. Fla. 2010), quoting *Brand*, 251 B.R. at 916. And the "personal nature of the" termination right is "further supported by the fact that only" the individual holder of the right "may exercise the right[.]" Id. at 914 (citation omitted). As a bankruptcy trustee cannot "force the debtor to exercise the right" of termination, it is a "personal right and not a property interest" and cannot be "ascribable to the debtor." Id. at 915–16, *citing McCourt*, 12 B.R. at 589. Even in the turnover context, property that may be valuable to the debtor still does *not* enter the bankruptcy estate unless the trustee can "demonstrate that the Property is not of inconsequential value or benefit to the estate[.]" *In re Freeman*, 664 B.R. 334, 348 (Bkrtcy.N.D.Miss., 2024), *quoting City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 160 (2021); 11 U.S.C. § 542(a).

The above cases apply with *more* force here because they often involved the trustee or a party to the bankruptcy proceedings attempting to force a bankrupt party to exercise or convey personal rights. Here there is simply no evidence of *any* attempt to force 2 Live Crew's members to exercise or convey their §203 rights as part of their bankruptcies. This is not surprising because the personal right was not yet vested, as discussed below. Because the §203 right may only be exercised by

its holder, at the holder's sole election, the right never enters the bankruptcy state.[8]

See *Stillwater Ltd.,* 2017 WL 2906056, at *3 (§203 right is "non-transferrable and

can only be exercised by the author or his/her heirs"), citing *In re Napster, Inc.*

Copyright Litig., 191 F.Supp.2d 1087, 1097 (N.D. Cal. 2002).

### 3. The §203 rights at issue were unvested at the time of bankruptcy and thus not part of any bankruptcy estate

The §203 rights were not property of the bankruptcy estates because §541(a)

only applies to property interests that exist as of date of the bankruptcy filing. A

bankruptcy trustee "succeeds only to the title and rights in property that the debtor

had at the time she filed the bankruptcy petition." *Weinman v. Graves (In re*

*Graves*), 609 F.3d 1153, 1156 (10th Cir.2010)(citation omitted). And a trustee can

only assert rights that the debtor had at the commencement of the bankruptcy. *In re*

*Seminole Walls & Ceilings Corp.*, 366 B.R. 206, 212 (Bankr. M.D. Fla. 2007)

(subsequent treatment omitted), citing *In re Witko*, 374 F.3d 1040, 1043 (11th

---

[8] A 2023 review found "persuasive several cases from federal bankruptcy courts
and other state courts" holding that personal rights do not enter a bankruptcy
estate. *Henry v. Casey*, 682 S.W.3d 171, 183–84 (Tenn. Ct. App. 2023),
(subsequent treatment omitted), *aff'd sub nom. In re Jahrling*, 816 F.3d 921 (7th
Cir. 2016) (personal right to "the property that he could receive cannot be claimed
by his creditors or become property of his bankruptcy estate")(collecting cases).

Cir.2004) (while § 541(a)(1) broadly defines estate, the trustee takes only debtor's property rights as held when bankruptcy commences)

Thus, a bankruptcy estate holds only the "legal or equitable interests of the debtor in property" at the bankruptcy's commencement. *Larson v. One Beacon Ins. Co.*, 2015 WL 1539173, at *2 (D. Colo. 2015), quoting 11 U.S.C. § 541(a)(1) (emphasis added). Thus, only "a legal claim or cause of action that had accrued" before the petition enters the bankruptcy estate. Id., citing *Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir.1996). And it limits the property of the estate to the precise property that the debtor had on the petition date. Id., citing *In re Hedged–Investments Associates, Inc.*, 84 F.3d 1281, 1285 (10th Cir.1996). So "if a claim or cause of action has not accrued prior to the bankruptcy filing, there is nothing for the Trustee to pursue." Id., citing *In re Witko*, 374 F.3d at 1042, cited with approval in *Cook v. Baca*, 512 Fed.Appx. 810, 820 (10th Cir.2013). Indeed, property "subsequently acquired by the debtor" belongs to the debtor "clear of all claims that are discharged by the bankruptcy proceeding." *In re Gucci*, 202 B.R. 686, 689 (Bankr. S.D.N.Y. 1996), *quoting* L. King, *Collier on Bankruptcy*, ¶ 541.05 (15th Edition, 1996).

Campbell and Ross's ability to exercise their §203 rights was thus never estate property because the right did not "vest" until decades after the petitions, on the "date the notice of termination [was] served[.]" 17 U.S.C. § 203(b)(2). Before

- 22 -

the 35-year window opened, the termination right was an inchoate right that had

not "vested" and that was resultantly incapable of transfer. See BLACK'S LAW

DICTIONARY 1563 (6th ed.1990) (the use of "vest" has a temporal connotation).

To "vest" means to "give an immediate, fixed right of present or future enjoyment"

and "to take effect." *Rodrigue v. Rodrigue*, 218 F.3d 432, 436 (5th Cir. 2000). And

to "own" means to have "good legal title" and "to hold as property; to have a legal

or rightful title to[.]" Id. The §203 rights would not become "fixed" until Campbell

and Ross survived until the 35-year window opened *and* served a §203-compliant

notice. Because Campbell and Ross's §203 rights had not vested at the time of

their petitions they were not "fixed rights."

Inchoate interests do not enter bankruptcy estates because "only legal title

and not an equitable interest ... becomes property of the estate" and even then

"only to the extent of the debtor's legal title to such property, but not to the extent

of any equitable interest in such property that the debtor does not hold." *In re

Lawton*, 261 B.R. 774, 777 (Bankr. M.D. Fla. 2001), quoting Bankruptcy Code §

541(d)." Because Ross and Campbell did not own and could not exercise their

§203 rights at the commencement of the bankruptcy estates, and there was no

guarantee it would accrue to Campbell or Ross *at all*, as they each had to both

survive until the date the right accrued and serve a §203-compliant notice to

exercise the right, the ability to exercise the right never entered the estate.[9] The trustees thus could not have exercised the §203 right because, along with it being personal, it did not accrue before the bankruptcy filing.

As a result, §541(a)(1) does not apply to the §203 rights, which are not "property interests" under §541(a)(1). *Miller*, 441 B.R. at 157 ("Section 541(a)(1) does not apply because [right at issue] did not exist as of the Petition Date." Thus, the right "is not a property interest under § 541(a)(1)."). In other contexts, courts have found it "obvious" that an "inchoate interest" cannot be "subject to administration" in bankruptcy. *Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008)(addressing insurance). As an estate cannot possess more than the debtor owns, the §203 rights remained outside the estate.

Even *In re Dittmar*, cited by Lil Joe, notes that in a related case "the [bankrupt] employee had no right to the bonus at the time the bankruptcy petition was filed. Accordingly, the employee's interest in the bonus was a mere expectancy and should not be part of the bankruptcy estate." 618 F.3d 1199, 1209 (10th Cir. 2010). So true here. Neither Ross nor Campbell had the right to

---

[9] Indeed, failure to comply with the §203 requirements could forfeit the personal §203 right. See *Harmon v. Williams,* 596 So.2d 1139, 1141–42 (ineffective election resulted in forfeiture), *aff'd,* 615 So.2d 681 (Fla.1993).

terminate the transfer under §203 at the time of their bankruptcies.[10] The §203 right was thus not part of the bankruptcy.

Lil Joe also cites *Camp v. St. Paul Fire & Marine Ins. Co.*, 616 So. 2d 12, 15 (Fla. 1993), but fails to cite to or advise this court that the quoted language is actually from *Palmer v. Travelers Ins. Co.*, 319 F.2d 296, 299-300 (5th Cir.1963), which was decided before the Bankruptcy Reform Act of 1978[11] and addressed an arguably "contingent" obligation that arose from a policy that had to be paid even in cases of insolvency.

Lil Joe also argues for the first time on appeal that "termination rights are akin to potential claims or causes of action" and thus part of the estate. App. Brief, pg. 40. But this argument is waived and meritless. *In re Icarus Holding, LLC*, which Lil Joe cites, states that an estate can hold only the claims the bankrupt party had against others at the bankruptcy's commencement. 391 F.3d 1315, 1319 (11th Cir. 2004*), certified question answered sub nom. Baillie Lumber Co. v. Thompson*,

---

[10] *Dittmar* is also distinguishable in that there the payment "obligation existed before Debtors filed for bankruptcy" and the payment at issue actually occurred during the bankruptcy. *In re Dittmar*, 618 F.3d at 1209. Here, the obligation did not exist, and the §203 right did not vest, until years after the bankruptcies closed.

[11] During that revision, "Congress added the critical language of § 541(a)(1), restricting property of the estate to that which existed "as of the commencement of the case."" *In re Bracewell*, 454 F.3d 1234, 1241–42 (11th Cir. 2006).

279 Ga. 288, 612 S.E.2d 296 (2005). Here, 2 Live Crew had no claims or termination rights at the bankruptcy cases' commencement. And the cited case addresses not what is properly included in a bankruptcy estate but whether Georgia law allowed "a corporation to bring an alter ego suit, therefore making such a suit property of the bankruptcy estate under 11 U.S.C. § 541." *Icarus*, 391 F.3d at 1322. It is inapposite.

Lil Joe argues that a trustee "is the only party with standing to prosecute causes of action belonging to the estate[,]" citing *Calderon v. U.S. Bank Nat'l Ass'n As Tr. for SG Mortg. Sec. Tr. 2006-fre2 Asset Backed Certificates Series 2006-fre2*, 860 F. App'x 686, 687–88 (11th Cir. 2021). But, neither Campbell nor Ross had "causes of action" or any other right that could have been exercised at the time of the bankruptcies. And only Campbell, Ross, or, potentially, their heirs can exercise the §203 right; there is no world in which a bankruptcy trustee can do so.

The §203 rights became exercisable after the bankruptcies closed and it "is settled that assets acquired post-confirmation are not property of the bankruptcy estate unless they are necessary to maintain the plan." *In re Foreman*, 378 B.R. 717, 721–22 (Bankr. S.D. Ga. 2007)(collecting cases). And there is no evidence that the rights were necessary for the plan. The right to exercise a §203 termination does not enter a bankruptcy estate.

- 26 -

**4.    The Section 203 rights were never identified as part of any bankruptcy estate and are excluded by non-bankruptcy law**

A "restriction on the transfer of a beneficial interest of the debtor in a trust[12] that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." *In re Meehan*, 102 F.3d 1209, 1210 (11th Cir. 1997), quoting 11 U.S.C.A. § 541(c)(2). Section 541(c)(2) "places a boundary on property of the estate in accordance with applicable nonbankruptcy law" so that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." *Hilsen*, 405 B.R. at 56, citing 11 U.S.C. § 541(c)(2), *Taft v. O'Connell (In re Taft)*, 184 B.R. 189, 190 (E.D.N.Y.1995)(remaining citations omitted). "Applicable nonbankruptcy law" means "precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable." *In re Moore*, 907 F.2d 1476, 1477 (4th Cir. 1990).

Here, the Copyright Act is the "non-bankruptcy" law that wholly restricts the transfer of §203 termination rights. See 17 U.S.C.§ 203 (a)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary, including

---

[12] Notably, "the restrictions which must be recognized in bankruptcy under § 541(c)(2) are not limited to state spendthrift-trust law, but include restrictions enforceable under either state or federal law." *Velis v. Kardanis*, 949 F.2d 78, 83 (3d Cir. 1991).

an agreement to make a will or to make any future grant."); *Baldwin,* 2012 WL 13019195, at *2 ("Congress created an **inalienable** right to terminate[.]") (citation omitted). The right thus never became part of the bankruptcy estates.

Lil Joe argues for the first time on appeal that §203 termination "affects *only those rights covered by the grants that arise under this title*, and in no way affects rights arising under any other Federal, State, or foreign laws." App. Brief. Pg.27, quoting 17 U.S.C. § 203(b)(5) (emphasis in App. Brief.). Lil Joe then argues that its "rights arise under the Bankruptcy Code" and that the Bankruptcy Code supersedes §203(a)." *Id.*, citing id. Lil Joe did not advance this argument in its summary judgment motion (indeed, §203(b)(5) does not appear in its motion at all) and thus waives same.

The argument also fails on the merits. There was no "grant" made during the bankruptcy by Ross or Campbell that they later sought to terminate. The grant at issue is the one memorialized in the 1990 Agreement between 2 Live Crew and Campbell's record company, in which Campbell and Ross relinquished their rights under the Copyright Act. The relevant "grant" arose under the Copyright Act and is unimpacted by the bankruptcies. And §203's intent would be frustrated if a downstream rightsholder could challenge termination of the original grant by obtaining those downstream rights in bankruptcy. It is not the law.

And "arise" means "to originate from a source." *Vetter v. Resnik*, 2024 WL 3405556, at *16 (M.D. La. 2024)(citation and subsequent history omitted). Here, the rights that originates from §203 are the right to terminate a copyright transfer. The rights that "arise" under or "originate" under the Bankruptcy Act are those that apply to a debtor filing bankruptcy. Lil Joe has no rights in 2 Live Crew's copyrights or §203 rights that originate from the Bankruptcy Act.

Finally, Lil Joe claims elsewhere in its brief that Campbell and Ross were "employees" of the label. If they were "employees," Campbell and Ross's §203 rights would *never* accrue or exist from the first as the albums would be "works-for-hire" not subject to termination, and thus the individual bankruptcies could not possibly include termination rights. See 17 U.S.C. § 203(a)(1) (works-for-hire are not terminable). It cannot claim both employment and the loss of §203 rights.

### 5. The bankruptcy filings make no reference to and did not incorporate the Section 203 rights.

Lil Joe identifies no reference to 2 Live Crew's §203 rights in any of the bankruptcy filings or agreements. This is terminal to its claim. Where a party concedes that there was "no express conveyance of any intellectual property rights but contend that the transfer of all of Debtors' "rights, title, and interest"" in the copyrights at issue, courts find *no* conveyance. *Branca v. Mann*, 2012 WL 3263610, at *3 (C.D. Cal. 2012)(party argued that general reference to all rights

- 29 -

"was sufficient to convey such intellectual property rights. The court disagrees.") When "none of the facts surrounding the sale of Debtors' personal property" indicate "a transfer of any intellectual property rights" there is simply no conveyance of intellectual property rights. Id., citing *Bryant v. Gordon*, 483 F.Supp.2d 605, 611–12 (N.D.Ill.2007). Such is the case here – there is no mention at all of the §203 rights and thus no transfer.

2 Live Crew's termination rights "were not expressly discussed in the Letter of Intent, the Reorganization Plan, the Confirmation Order, or other record evidence. Absent a "clear indication that Campbell or Ross' termination rights were a part of their bankruptcy estates," they were not lost. *Ross*, 752 F. Supp. 3d at 1287.

### 6. If the Section 203 rights ever entered the bankruptcy estates, they were returned to 2 Live Crew once those bankruptcies ended

Even if the §203 rights entered the bankruptcy estates (they did not), they would later have returned to Campbell and Ross. The rights were not assigned before the estate terminated and in "a Chapter 11 case, upon confirmation of a plan of reorganization, the property of the **estate vests in the debtor** and the estate terminates—that is, unless the plan provides otherwise. *In re Linsenmeyer*, 92 F. App'x at 102 (emphasis added), citing 11 U.S.C. § 1141(b)("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan

- 30 -

vests all of the property of the estate in the debtor."); see also *In re Chattanooga Wholesale Antiques, Inc*., 930 F.2d 458, 462 (6th Cir.1991). Here the §203 rights are never mentioned, let alone identified, distributed, and confirmed. Even if they entered the estates they necessarily reverted to Campbell and Ross.

Lil Joe argues that the §203 rights would have been included in the bankruptcy even if not identified or would have remained in the bankruptcy unless abandoned back to the debtor, but this is false and the argument improperly relies on Chapter 7, [13] which is not at issue. Campbell and Luke Records filed Chapter 11 cases (and Ross's bankruptcy was dismissed). Thus any §203 rights that transferred to the bankruptcy estate returned to Campbell and Ross at the bankruptcy's completion.

There is no evidence that Campbell or Ross ever conveyed the §203 right in any bankruptcy agreement or that any bankruptcy plan included a transfer of the

---

[13] Lil Joe engages in this same misdirection throughout, citing Chapter 7 cases, which are inapplicable to the Chapter 11 bankruptcies at issue here, for important legal principles. See, e.g., Doc.164, 5, which cites *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011), a Chapter 7 case. It also cites *DeNadai v. Preferred Cap. Markets, Inc*., 272 B.R. 21, 24 (D. Mass. 2001), a Chapter 7 case that addressed stock options exercisable by anyone and for which the debtor had a "contractual right" at the time of the bankruptcy. Id. at 30. Here there was on contractual right and the ability to exercise the right was personal. The authority is inapposite.

§203 right.[14] As such, even if the §203 rights were ever part of a bankruptcy estate (they were not), they were never transferred during the pendency of that estate and thus would have reverted once the bankruptcy estate closed.

***

For the above reasons, the district court correctly concluded that the 2 Live Crew's §203 rights were inalienable.

### B.    2 Live Crew terminated the relevant agreement

The verdict properly found that 2 Live Crew terminated the transfer documented in the 1990 Agreement. When reviewing a "verdict, we review the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party." *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (internal quotation marks omitted). So owing, this Court should affirm that 2 Live Crew's 1990 Agreement memorialized their prior oral agreement covering the albums created by 2 Live Crew between 1986 and 1990 (i.e., the Subject Albums).

### 1.    The evidence supported the verdict

The trial evidence showed that the 1990 Agreement was signed by all members of 2 Live Crew and by Campbell on behalf of his record label (Doc.250-

---

[14] Notably, the Campbell Joint Plan does not include any copyrights as transferred Assets. See Doc.32-2, 47.

1), that the parties at all times performed under the 1990 Agreement (Doc.277, 20:23-21:3), including by Campbell's label releasing the Subject Albums and paying 2 Live Crew royalties (Doc.277, 16:21-17:24, 54:16-20; Doc.250-16), that the agreement covered the relevant period (Doc.277, 24:20-26:8), and that the agreement includes language confirming the label's ownership of the sound recordings and other copyrights in the Subject Albums (Doc.250-1, Doc.277, 28:3-16). Both Campbell and Ross testified to this oral agreement and the 1990 Agreement's memorialization of same. Doc.277, 15:25-18:23, 23:18-28:16; Doc.300-1, 7:9-23, 34:8-18, 43:3-45:1.

Even Weinberger, after testifying at trial that the 1990 Agreement was a "phony," was impeached by his own affidavit attesting that the 1990 Agreement was valid and that Lil Joe relied on it to obtain its now-terminated rights in the Subject Albums. Doc.250-17.

There was thus sufficient evidence from which the jury could (and did) conclude that the 1990 Agreement transferred the copyrights in the Subject Albums from 2 Live Crew to Skyywalker Records. The district court and jury's decisions should be affirmed.

**2.    A written agreement can confirm a prior oral agreement and need not specifically identify the prior oral agreement**

2 Live Crew's oral agreement was properly confirmed in writing via the 1990 Agreement. It is settled that the 17 U.S.C. §204 writing requirement for a copyright transfer "can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer." *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc*., 70 F.3d 96, 99 (11th Cir. 1995). Such is the case here. 2 Live Crew, early in their careers, orally assigned the Subject Albums' copyrights to Campbell's label to release to the public and collect royalties for the group, and the label did so. This oral agreement was at all times performed under and later confirmed in writing in the 1990 Agreement.

Lil Joe admits that oral copyright transfers can later be memorialized in writing but argues that the 1990 Agreement could not have memorialized 2 Live Crew's oral agreement because it does not expressly describe that oral agreement. App. Brief pg. 41. This argument fails because "[n]o magic words must be included in a document to satisfy §204(a). Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Radio Television Espanola, S.A. v. New World Entertainment, Ltd.*, 183 F.3d 922, 927 (9th Cir.1999), citing *Nimmer* § 10.03[A][2] at 10-37); see also, *Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc.*, 2008 WL 299024, at *14–16 (S.D. Fla.

2008). To qualify as a transfer the writing need not "contain any particular language." *Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388, 392 (5th Cir. 2005). Nor must it refer to a "copyright." *ITOFCA, Inc., v. Mega Trans Logistics, Inc.*, 322 F.3d 928, 931 (7th Cir. 2003).

The 1990 Agreement thus need not contain any specific language describing the oral agreement, it need only express 2 Live Crew's intent to transfer. And it does. Specifically, paragraph 2(d) confirms that ownership of the copyrights for the master recordings and performances embodied therein were transferred to Skyywalker Records. Doc.250-1, 3. And all parties to the agreement that testified confirmed that the intent was to memorialize the prior copyright transfers for the Subject Albums. The 1990 Agreement thus satisfied the minimal requirements of §204(a).

Lil Joe cites *Lyrick Studios* to argue that a written transfer fails unless it specifically identifies the prior oral contract, but *Lyrick* says no such thing. Instead, *Lyrick* confirmed that the agreement need *not* "contain any particular language." 420 F.3d at 392, citing *Radio Television*, 183 F.3d at 927. The *Lyrick* court only found the "writing" insufficient there because, inter alia, the parties disputed the agreement and the writing itself was a hodgepodge of informal faxes that contemplated a future "formal agreement." Id. at 395-396 (internal citations omitted). But the 1990 Agreement *is* a formal contract with specific transfer

- 35 -

language that the parties to the contract agree memorialized a prior oral transfer. It therefore satisfies §204.

### 3. The merger clause argument fails

Lil Joe's argument that the 1990 Agreement cannot memorialize the group's oral agreement because it contains a merger clause disclaiming prior oral agreements is baseless. The 1990 Agreement contains an "entire agreement" provision that does not disclaim or even *discuss* prior oral agreements. It instead confirms the 1990 Agreement is the parties' complete agreement and cannot be modified except by another writing. Doc.250-1, 22**.** And the parties' prior oral agreement is not a modification or a contradicting agreement; the 1990 Agreement simply memorializes the agreed upon terms of that oral transfer. Lil Joe's argument that an "entire agreement" clause somehow prohibits memorialization of a prior oral transfer fails.

### 4. Lil Joe's arguments regarding the 1990 Agreement contradict its district court positions and are waived

Lil Joe argues for the first time on appeal that the 1990 Agreement (which Lil Joe's principal testified at trial was "phony" and otherwise ineffective) is a written employment agreement *and* a work-for-hire agreement confirming that the Subject Albums were works-for-hire. This argument is waived because it was not made, and contradicts their positions, below. See *Koch Foods of Alabama, LLC v.*

*Gen. Elec. Cap. Corp.*, 303 F. App'x 841, 846–47 (11th Cir. 2008)("Court will not consider on appeal issues not raised before the district court."); see also *Eason v. PNC Bank, Nat. Ass'n*, 617 F. App'x 942, 944 (11th Cir. 2015) (same).

Lil Joe's new arguments re the 1990 Agreement are also waived as they were not raised in the prior iterations of its Rule 50 motion. Rule 50 requires that a party identify in the initial motion "the law and facts that entitle the movant to the judgment," and thus a renewed Rule 50(b) motion can be granted "only on grounds advanced in the preverdict [Rule 50(a)] motion." *McGinnis*, 817 F.3d at 1260, citing Fed.R.Civ.P.50(b). This is because "if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial." Id. at 1261. Of course, raising such a claim for the first time on appeal, after both the original and renewed Rule 50 motions, is even more prejudicial.

Here, neither Lil Joe's original 50(a) motion (Doc.251) nor its renewed 50(b) motion (Doc.284) claimed that the 1990 Agreement was either an employment agreement or a work-for-hire agreement, and indeed they both claim that the 1990 Agreement had no effect or was fabricated. Lil Joe cannot advance a new position vis-a-vis the 1990 Agreement now.

### 5.     The Subject Albums were not works made for hire

Because a work "made-for-hire" is "a statutory exception to the general rule of author-ownership of copyright, the party claiming the exception bears the burden of proving that the exception applies." *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021), citing *Woods v. Bourne Co.*, 60 F.3d 978, 993-94 (2d Cir. 1995). Lil Joe failed to carry this burden at trial and cannot now do so by arguing that what it previously called the "phony 1990 Agreement" is really a valid employment agreement ***and*** a work-for-hire agreement.

Ownership of a copyright can only initially vest in an entity as a work-for-hire in two narrow circumstances: where the work is (1) "prepared by an employee within the scope of his or her employment," or where the work is "specially ordered or commissioned for use as a contribution to a collective work," or as "part of a motion picture or other audiovisual work," or as part of other works similarly irrelevant here "if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101. These two parts "are mutually exclusive: the first part applies to works created by employees; the second applies to works created by independent contractors" *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc*., 128 F.3d 872, 877 (5th Cir. 1997). Lil Joe inconsistently claims both and its arguments fail.

### a.    2 Live Crew were not label employees

2 Live Crew, like virtually all recording artists, were not employees of their record label for purposes of making music. The Subject Albums thus were not "prepared by [] employee[s] within the scope of [their] employment." 17 U.S.C. § 101. Campbell, as the head of the label and as a recording artist, Ross, as a recording artist, and the Wong Won family members, who manage their late father's affairs, all testified that 2 Live Crew were not employees. While Lil Joe may dispute this testimony, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Cleveland v. Home Shopping Network, Inc*., 369 F.3d 1189, 1193 (11th Cir. 2004) (internal quotation marks omitted). The jury's verdict reflects this testimony.

Lil Joe falsely asserts that the 1990 Agreement unambiguously confirms that 2 Live Crew were employees. A contract is not unambiguous if any terms thereof "may be fairly understood in more ways than one and is susceptible of more than one meaning and of interpretation in opposite ways." *Rey v. Guy Gannett Pub. Co.*, 766 F. Supp. 1142, 1146 (S.D. Fla. 1991)(citation omitted). Here, the 1990 Agreement does not expressly identify 2 Live Crew as employees and evidences that they were not since both it and the 1991 Agreement include a transfer of 2 Live Crew's copyrights—which would be unnecessary if the label owned the

- 39 -

copyrights from inception. Docs.250-1; 252-1. The 1990 Agreement and 1991

Agreement thus evidence that 2 Live Crew were *not* employees and were instead

independent contractors with whom the label had formal transfer agreements and

to whom it paid royalties.

Moreover, whether a work is employee-created is not a question of contract

but "should be made with reference to agency law," examining all the relevant

circumstances. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 742–43

(1989). To this end, Courts apply the *Reid* factors which are "(1) the hiring party's

right to control the manner and means by which the work is accomplished; (2) the

skill required to create the work; (3) the source of the instrumentalities and tools;

(4) the location of the work; (5) the duration of the relationship between the

parties; (6) whether the hiring party has the right to assign additional projects to the

hired party; (7) the extent of the hired party's discretion over when and how long

to work; (8) the method of payment; (9) the hired party's role in hiring and paying

assistants; (10) whether the work is part of the regular business of the hiring party;

(11) whether the hiring party is in business; (12) [] employee benefits; [and] (13)

the tax treatment []." *Horror Inc*, 15 F.4th at 244, citing *Reid*, 490 U.S. at 751–52.

Here, the members of 2 Live Crew had full creative control when creating

the Subject Albums and recorded when and where they wished, and the record

label could not assign them songs or albums to record. Doc.277,12:1-17, 26:5-24,

- 40 -

53:2-54:15. Campbell, the label's owner, testified that the label had no "right of control" over 2 Live Crew. Doc.277, 48:15-23, 49:17-51:23. The Subject Albums were creative works requiring artistic skill. Doc.277, 48:24-49:16; D50, 19. The label was in the business of selling music, not making music. Doc.277, 47:3-48:14. The members of 2 Live Crew did not receive tools or materials from the label (Doc. 277, 51:24-53:1), were not hired assistants by the label (Doc. 277, 54:22-55:6), were paid royalties for their music rather than salaries (Doc. 277, 54:16-20; Doc.250-16), and never received employment benefits or insurance (Doc. 277, 55:9-56:25). Because the *Reid* factors overwhelmingly weigh against a finding that 2 Live Crew were employees, there is sufficient evidence to establish that the Subject Albums were not works-for-hire.

Lil Joe fails to directly address the *Reid* factors and instead argues that because the 1990 Agreement states that 2 Live Crew recorded "exclusively" for Skyywalker Records during the term, they were employees. Not so. The evidence confirms that the members of 2 Live Crew were free to and did work with other companies during the term of the 1990 Agreement, including entering into multiple agreements with PAC Jam Publishing in 1988. Doc.250-13. And even if 2 Live Crew had worked exclusively with Skyywalker Records during the term of the 1990 Agreement, it is not the law that anyone who contracts exclusively with an entity for a limited time is an employee, and Lil Joe cites no authority saying so.

The *Reid* factors make this clear, as they contemplate far more than exclusivity of services. Lil Joe's claim that the 1990 Agreement "indicates" that 2 Live Crew were record label employees is thus both untrue and insufficient.

The only other factors Lil Joe discusses, without placing them in the context of *Reid*, are salaries and employee benefits, but its claims are unsupported by the evidence.[15] Indeed, Lil Joe made similar claims at trial about alleged pension plans and benefits but failed to produce a single document evidencing either and its witness did not work with the group or the label during the relevant period, while Campbell, as the owner of the record label, confirmed that no such pensions or benefits existed for 2 Live Crew. Doc.277, 141:19-142:20. The heirs of the other 2 Live Crew members also confirmed they had never received money from or seen evidence of any such benefits or pensions and that they had no knowledge of their fathers being employees of the label. Doc.277, 9:3-11:1, 146:15-147:13. Lil Joe also failed to produce any documentation of the alleged salaries, only pointing to scattered checks for small, varied sums which Campbell confirmed were not salary payments but *per diem*, or cost reimbursement checks paid to the artists. Doc.277, 38:18-39:20. The record thus supported the verdict.

---

[15] Lil Joe cites Doc.252-15, 16, 17, 18, and 19 and Doc.275 at 15-21, but these are copyright registrations and testimony on those registrations, neither of which relate to salaries or benefits.

Lil Joe also claims that because the 1990 Agreement describes the royalty payments meant for 2 Live Crew as "payment in full for their services," they must have been employees, but this is false. It is relevant to no *Reid* factors and is meaningless because the evidence shows that 2 Live Crew were *not* paid salaries but rather split the money from shows and the songs as royalties as discussed above. And "where the creator of a work receives royalties as payment, that method of payment generally weighs against finding a work-for-hire relationship." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 140 (2d Cir. 2013) (citation omitted). And Lil Joe's cited authority is inapplicable. *Muller v. Walt Disney Prods.*, addressed a film composer's joint authorship and ownership of a film with Disney, and did not address whether he was Disney's employee. 871 F. Supp. 678, 685 (S.D.N.Y. 1994). That case was also decided under 1909 Act and not the 1976 Act that applies here and which promulgated a new work-for-hire test. *Id*. at 684, fn. 2.

Lil Joe also makes much of the 1990 Agreement stating that Campbell's label shall own the rights from "inception," but this is consistent with a transfer of copyrights and certainly does not make the albums works-for-hire. To the contrary, courts regularly acknowledge agreements providing for such transfers. See *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 747 F. App'x 3, 5–6 (2d Cir. 2018) (acknowledging copyright transfer from musical artist to record label

that assigned rights in the work "from the time of its creation."); see also *Cooley v. Penguin Grp. (USA) Inc.*, 31 F. Supp. 3d 599, 602–03 (S.D.N.Y. 2014), as corrected (July 14, 2014)(acknowledging a written transfer that assigned company all of artists' copyrights in the work "upon creation"). This is also consistent with the testimony, which was that the oral agreement was entered into and applied when the group went into the studio to record the albums. See Doc.277, 15:25-18:23, 23:18-28: 16; Doc.300-1, 7:9-23, 34:8-18, 43:3-45:1. The verdict reasonably concluded that the 1990 Agreement transferred the rights from 2 Live Crew to Campbell's label.

Moreover, Campbell owned the label and recorded for it and "where the hired party is also an owner or partner of the company asserting ownership, courts have declined to find a work made for hire because of the company's lack of control over the owner." *Clancy v. Jack Ryan Enters., Ltd.*, WL 488683, at *26 (D. Md. 2021); see also *Heimerdinger v. Collins*, 2009 WL 1743764, at *4 (D. Utah 2009) (rejecting work-for-hire claim because partners are generally not employees of the partnership)(remaining citations omitted). Campbell was not an employee as an artist and there is no basis to disturb the verdict.

### b.    The 1990 Agreement is not a work-for-hire agreement

Lil Joe claims, for the first time, that the 1990 Agreement was a "work-for-hire agreement." This argument is waived and frivolous. A work not created by an

employee within the scope of their employment can only be a work-for-hire if it is "specially commissioned work that is subject to an express agreement that the work will be treated as one made for hire is such a work" under §101(2). *Horror Inc.*, 15 F.4th at 243, citing 17 U.S.C. § 101; see *Reid*, 490 U.S. at 738; see also *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 558 (2d Cir. 1995). The 1990 Agreement does not meet the requirements of §101(2).

First, there is no evidence that the Subject Albums were "specially ordered or commissioned for use as a contribution" to another work and Lil Joe does not argue otherwise. *Clancy*, 2021 WL 488683, at *24 (declining to address argument because "Neither side argues that any of the books were 'specially ordered or commissioned.'"). A party "who hires a "specially ordered or commissioned" work has a right to specify the characteristics of the product desired, at the time the commission is accepted," and there is no evidence here that the label had a right to specify the characteristics of the Subject Albums. *Reid*, 490 U.S. at 741. Indeed, Campbell testified that that the group could record what, when, where, and how it wanted. Doc.277, 48:15-49:23. The Subject Albums were thus not specially commissioned works.

Second, the Subject Albums are not within the categories of works that can be designated works-for-hire by agreement. Under §101(2), only certain types of works, such as movies or translations, can be designated "works-for-hire" by

agreement. 17 U.S.C.A. § 101(2). The sound recordings comprising the Subject Albums do not fall within these categories. *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 541 (D.N.J. 1999)("the sound recordings are not a work for hire under the second part of the statute because they do not fit within any of the nine enumerated categories"); citing *Reid* at 109. Per statute, the Subject Albums cannot be deemed works-for-hire by agreement.

Third, even if the Subject Albums could be covered by a work-for-hire agreement (they cannot), the 1990 Agreement does not qualify as one. §101(2) requires the parties, in writing, "**expressly** agree…that the work shall be considered a work made for hire." *Vergara Hermosilla v. The Coca-Cola Co.*, 717 F. Supp. 2d 1297, 1304 (S.D. Fla. 2010), aff'd sub nom. *Hermosilla v. Coca-Cola Co.*, 419 F. App'x 917 (11th Cir. 2011)(emphasis added), citing 17 U.S.C. § 101. Here, the 1990 Agreement does not set forth any express agreement that the Subject Albums were works-for-hire or even include the term "work-for-hire." Doc.250-1. The parties certainly could have added such language, but chose not to, because they all agreed the Subject Albums were not works-for-hire.

Moreover, work-for-hire agreements cannot be entered into after a work's creation. The Copyright Act "requires that the parties agree **before the creation of the work** that it will be a work made for hire." *Dumas*, 53 F.3d at 559 (emphasis added). Here, the Subject Albums were each created between 1986 and 1989,

- 46 -

*before* 2 Live Crew executed the 1990 Agreement. Docs.250-6, 250-8. The 1990 Agreement thus cannot be a work-for-hire agreement.

Lil Joe fails to address the §101(2) requirements but nevertheless argues that the 1990 Agreement is unambiguously a work-for-hire agreement, or otherwise that extrinsic trial evidence proved it was one as a matter of law. Both claims fail. Lil Joe asks the court to infer an express work-for-hire agreement by cobbling together language from other terms of the contract. This is not unambiguous, express language establishing a work-for-hire.

Lil Joe's extrinsic evidence provides no assistance. It falsely claims that Campbell conceded the 1990 Agreement was a work-for-hire agreement, but to the contrary he confirmed that 2 Live Crew orally agreed that his label would ultimately own the copyrights. It falsely claims that Campbell conceded the 1990 Agreement was a work-for-hire agreement, but to the contrary he confirmed that 2 Live Crew agreed that his label would ultimately own the copyrights. Doc.277, 6:9-25. He also clearly testified that the Subject Albums were ***not*** works-for-hire:

| | |
|---|---|
| Burroughs: | As head of the label, did you have some input as to whether or not a worker could be a work for hire? |
| Campbell: | Yes, sir. |
| Burroughs: | At any time, did you decide or agree that any of the Subject Albums were works for hire? |
| Wolfe: | Objection. Leading |
| The Court: | Overruled. You may answer. |
| Campbell: | None of these albums was works for hire. |

Doc.277, 81:5-12.

Campbell thus confirmed that the works were *not* for-hire, and his testimony supports the verdict.

Lil Joe cites *Warren v. Fox Fam. Worldwide* to claim that the "broad terms" of the 1990 Agreement constituted a work-for-hire agreement, but this baseless. *Warren* addressed contributions to a motion picture, one of the categories enumerated in §101(2), and the relevant the agreements expressly identified the contracting entity as "[Warren's] employer for hire" and further that the compositions were "works made for hire." 328 F.3d 1136, 1141 (9th Cir. 2003). Here, the Subject Albums are not among the categories of works specified in §101(2) and the 1990 Agreement include no express work-for-hire language. *Warren* is thus distinguishable.

Lil Joe's reliance on the copyright registration certificates for the sound recordings in the Subject Albums is similarly meritless. These registrations were filed unilaterally by Lil Joe decades *after* the Subject Albums were released and thus enjoy no presumption of accuracy for the information contained within. See *Brown v. Latin Am. Music Co.,* 498 F.3d 18, 24 (1st Cir.2007) (registration received no validity presumption and little to no weight because it was obtained more than five years after works were published). Indeed, the registrations are demonstrably inaccurate, as they state that either Luke Records, Inc. or Lil Joe are

the authors of works when neither entity existed at the time 2 Live Crew recorded the albums, and thus neither entity could be the author. Even still, on one of these registrations Lil Joe confirmed that the work *was not* made for hire. Doc.250-12. And there is *no* evidence that 2 Live Crew ever saw, let alone approved, those registrations.

Moreover, these self-serving, inaccurate registrations stand in stark contrast to those for the compositions for the songs in the Subject Albums, which were filed contemporaneously and accurately identify 2 Live Crew's members as the authors and expressly state that the works were *not* "works made for hire." Docs.250-10; Doc.250-11.[16] Weinberger admitted at trial that he possessed these registrations after the bankruptcy and never attempted to "correct" them. Doc.275, 236:2-20. Lil Joe's later-filed, contradictory registrations are insufficient to challenge the jury's verdict that the Subject Albums were not works-for-hire.

---

[16] These registrations identify PAC Jam Publishing as the copyright claimant via a written agreement, as Luther Campbell and his label assigned the composition, though not the sound recordings, for songs including those on the Subject Albums to PAC Jam at this time.

**C.    Lil Joe lacks standing to challenge the 1990 Agreement or claim that the Subject Albums were works-for-hire**

Lil Joe cannot, decades after the 1990 Agreement's execution, inconsistently claim that the agreement was ineffective and also somehow made the Subject Albums works-for-hire.

**1.    Lil Joe cannot dictate an interpretation of the 1990 Agreement**

Where there is "no dispute between the copyright owner and the transferee," it would be "unusual and unwarranted to permit a third-party" to challenge the transfer. See *Imperial Residential Design*, 70 F.3d at 99 (addressing infringement), citing *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir.1982). Thus, in cases where the parties to an agreement agree that it effected a transfer, a challenger may not challenge a transfer by invoking §204(a). See id., citing, *Great S. Homes, Inc. v. Johnson & Thompson Realtors*, 797 F. Supp. 609, 611 (M.D. Tenn. 1992).

Here, there was and is no dispute between the members of 2 Live Crew and Campbell (on behalf of his record label) that the 1990 Agreement confirmed their prior oral transfer of the copyrights in the Subject Album. Lil Joe is indisputably a third party to both the oral agreement and the 1990 memorialization, and Weinberger admitted at trial that he was not involved with 2 Live Crew at all at the time the transfer and memorialization occurred. Doc.275, 83:1-5. It similarly undisputed that Allen Jacobi was not involved with the oral transfer or the 1990

Agreement. Doc.275, 85:10-11, 9523-97:10, 97:21-98:1; Doc.276, 36:20-22. Lil Joe and its witnesses are thus each third parties who cannot challenge the copyright transfer between 2 Live Crew and Campbell's label. The jury thus rejected Lil Joe's challenges and confirmed that the 1990 Agreement's transfer.

Because there was and is no dispute between 2 Live Crew and Campbell's record label that the 1990 Agreement was *not* a work-for-hire but instead confirmed the transfer of the Subject Album copyrights, Lil Joe cannot challenge that transfer because it was a third party uninvolved in the agreement. See *CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, , 2003 WL 27387389 at *2 (S.D. Fla. 2003) ("The Court will not disturb such a transfer of rights where no dispute exists between the copyright holder and the licensee."); see also *Lyrick Studios, Inc.*, 420 F.3d at 393-94 ("courts are hesitant to allow an outside infringer to challenge the timing or technicalities of the copyright transfer.")

## 2. Lil Joe cannot challenge 2 Live Crew's creation of the Subject Albums as independent contractors

Lil Joe also lacks standing to claim that 2 Live Crew were employees of Campbell's record label. 2 Live Crew and Campbell's record label both unequivocally stated that 2 Live Crew signed the 1990 Agreement as independent contractors and were not employees for purposes of creating the Subject Albums. Lil Joe cannot challenge this testimony, because, as mentioned above, it "would be

unusual and unwarranted" to permit a third-party to claim a work was made for-hire. *Imperial Residential Design*, 70 F.3d at 99 (citation omitted).

That is particularly true here because Campbell speaks both as a recording artist and the owner of the record label, a business entity. When a company's principal testifies that he and the company agree that he and the company "intended that he be the owner of the copyrights[,]" he is the owner. *Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1156 (9th Cir. 2010) (citations omitted). Campbell testified both as an artist and the label head that 2 Live Crew were not employees and that the label owned the copyrights per the transfer confirmed in the 1990 Agreement. Given the above, it would thus be "unusual and unwarranted to permit" Lil Joe, decades after the fact, to now claim that 2 Live Crew were employees in an attempt to defeat 2 Live Crew's termination right.

## D.    The termination notice identified the correct agreement

Lil Joe perfunctorily argues that because the Notice identified the 1990 Agreement, and not the 1991 Agreement, it is defective. This claim is not only waived, as Lil Joe did not raise it in its renewed Rule 50 motion, but is baseless as it rests on the premise that the 1990 Agreement was not a copyright transfer as a matter of law when no such finding has ever been made. Indeed, the jury and the district court concluded that the opposite was amply supported by the evidence. Defendants' Notice thus identified the correct copyright transfer and divested Lil

Joe of all its rights in and to the Subject Albums. Doc.250-2. The district court's

confirmation of same should be affirmed.

### E.    Judicial estoppel precludes Lil Joe's arguments

Judicial estoppel is "applied to the calculated assertion of divergent sworn

positions." *United Kingdom v. United States*, 238 F.3d 1312, 1324 (11th Cir.

2001)(citations omitted). Lil Joe offers such positions. First, it argued that 2 live

Crew were "employees" of Campbell's label such that the albums were works-for-

hire. Then, it argued that Campbell's label entered into a 1991 agreement with 2

Live Crew that made the albums works-for-hire. In doing so, it challenged as

"phony"[17] and fraudulent the 1990 Agreement and even claimed that there was no

1990 Agreement.[18] Lil Joe also argued that 2 Live Crew were *not* employees and

---

[17] Doc.275, 121:3-7:

Burroughs:   You have come into court and told the jury, the judge, and my clients
             that this is a phony. It's a legal fraud. Isn't that so?
Weinberger: It is.
[18] Doc.275, 102:6-9:

Burroughs:   I understand but as they were actually making these agreements and
             releasing the albums, you were nowhere. You were nowhere around.
             You weren't there?
Weinberger: There were no agreements made until 1991.
Doc.275, 122:3-6:

Burroughs:   Okay. So there is three agreements. The '90 Skyywalker Agreement
             we are looking at, the '91 Agreement and the '95 Agreement. Right?
Weinberger: I don't consider this an agreement.

lost their §203 rights in bankruptcy or via settlement agreements. All of these arguments were rejected.

Now, on appeal, Lil Joe *again* shifts course and claims that the 1990 Agreement was a work-for-hire agreement. It cannot do so.

Employees do not own the works they create in the scope of their employment and thus have no termination rights for such works. See 17 U.S.C. §203(a). Yet, Lil Joe argues that Campbell and Ross *did* have such termination rights and somehow transferred or lost those rights in bankruptcy while also arguing, in a wildly divergent fashion, that these individuals were employees. And Lil Joe now argues on appeal that the 1990 Agreement it previously claimed to be "phony" was a work-for-hire agreement that divested 2 Live Crew of any termination rights from the outset.

When addressing copyright ownership disputes, courts have *not* allowed parties to take inconsistent factual positions as Lil Joe has troublingly done here. Attempting to exploit "the exigencies of the moment," Lil Joe now claims that 1990 Agreement proves that 2 Live Crew were employees while also proving the opposite, that the group agreed in that the albums were works-for-hire. But courts addressing this exact factual inconsistency have precluded parties from claiming that an individual was both an employee and not an employee of the defendant. *Korman v. Iglesias*, 2018 WL 4410226, at *4 (S.D. Fla. 2018), *report and*

*recommendation adopted,* 2018 WL 4409973 (S.D. Fla. 2018), *aff'd,* 778 F. App'x 680 (11th Cir. 2019), citing *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.,* 834 F.2d 208, 214 (1st Cir. 1987)("court prevented a party from claiming that he was both an employee and not an employee of the defendant."), citing *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1167 (4th Cir. 1982).

Lil Joe previously argued that Campbell and Ross were not employees, and that the 1990 Agreement was fraudulent, which "directly contradicts" its current position, which is that Campbell and Ross were employees, or they were not employees but agreed that the Subject Albums were works for hire, per the 1990 Agreement. Also important, Lil Joe's inconsistent prior positions were made under oath, which suffices to apply estoppel. See Doc.32; Doc.250-17. Because "[b]oth conclusions cannot be true" Lil Joe is estopped from taking this new position. Id. (citation omitted). Lil Joe is judicially estopped from claiming that the 1990 Agreement proves 2 Live Crew's label employment or agreement that the albums were works-for-hire.

## CONCLUSION

For the foregoing reasons, the verdict and the court's orders should be affirmed.

Respectfully submitted,

Dated: June 9, 2025          By:

_____

Scott Alan Burroughs, Esq.
DONIGER / BURROUGHS
*Attorneys for Defendants-Appellees*
RAVEN ROSS, CHRISTOPHER
WONG WON, JR., RODERICK
WONG WON, LETERIUS RAY,
ANISSA WONG WON, AND
LUTHER CAMPBELL

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

**1.      Type-Volume**

This document complies with the word limit of FRAP because, excluding

the parts of the document exempted by FRAP 32(f), because this document

contains 12,875 words.

**2.      Typeface and Type-Style**

This document complies with the typeface requirements of FRAP 32(a)(5)

and the type-style requirements of FRAP 32(a)(6).

Respectfully submitted,

Dated: June 9, 2025            By:          */s/ Scott Alan Burroughs*
                                        Scott Alan Burroughs, Esq.

- 57 -

## CERTIFICATE OF SERVICE

I certify that I electronically filed this OPENING BRIEF OF PLAINTIFF-APPELLANT with the United States Court of Appeals for the Eleventh Circuit via the Court's CM/ECF system on June 9, 2025, and that service will be made on counsel of record for all parties to this case through the Court's CM/ECF system.

Respectfully submitted,

Dated: June 9, 2025          By:          */s/ Scott Alan Burroughs*
                                         Scott Alan Burroughs, Esq.

- 58 -