IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 24-13978-G
LT NO. 1:21-cv-23727-DPG

---

LIL' JOE RECORDS, INC.,

*Plaintiff/Appellant*,

v.

RAVEN ROSS, CHRISTOPHER WONG WON, JR., RODERICK WONG WON,
LETERIUS RAY, ANISSA WONG WON AND LUTHER CAMPBELL,

*Defendants/Appellees*.

---

REPLY BRIEF OF APPELLANT LIL' JOE RECORDS, INC.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

Richard C. Wolfe
WOLFE LAW MIAMI, PA
175 SW 7th Street, Suite 2410
Miami, Florida 33130
Telephone: (305) 384-7370
Facsimile: (305) 384-7371
rwolfe@wolfelawmiami.com

Elliot B. Kula
KULA & ASSOCIATES, P.A.
12000 Biscayne Boulevard, Suite 221
Miami, Florida 33181
Telephone: (305) 354-3858
Facsimile: (305) 354-3822
eservice@kulalegal.com
elliot@kulalegal.com

*Counsel for Plaintiff/Appellant Lil' Joe Records, Inc.*

*LIL' JOE RECORDS, INC. V. WONG WON, ET AL.*
CASE NO. 24-13978-G

## CERTIFICATE OF INTERESTED PERSONS
### AND
### CORPORATE DISCLOSURE STATEMENT

Plaintiff/Appellant, Lil' Joe Records, Inc., submits this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this review:

1.    Burroughs, Scott, Esq. — *Counsel for Defendants/Appellees*

2.    Campbell, Luther — *Defendant/Appellee*

3.    Doniger / Burroughs — *Counsel for Defendants/Appellees*

4.    Gayles, Hon. Judge Darrin P. — *District Court Judge*

5.    Jenkins, David, Esq. — *Counsel for Defendants/Appellees*

6.    Kula, Elliot B., Esq. — *Counsel for Plaintiff/Appellant*

7.    Kula & Associates, PA — *Counsel for Plaintiff/Appellant*

8.    Lil' Joe Records, Inc. — *Plaintiff/Appellant*

9.    Nieves, Angela Maria, Esq. — *Counsel for Defendants/Appellees*

10.   Orshan, Paul L., Esq. — *Counsel for Plaintiff/Appellant*

11    Ray, Leterius — *Defendant/Appellee*

12.   Ross, Mark — *Defendant/Appellee* (deceased)

13.   Ross, Raven — *Defendant/Appellee*

*LIL' JOE RECORDS, INC. V. WONG WON, ET AL*
**Case No. 24-13978-G**

**CERTIFICATE OF INTERESTED PERSONS**
**AND**
**CORPORATE DISCLOSURE STATEMENT**
(Continued)

14.    Rothman, Joel Benjamin, Esq. — *Counsel for Defendants/Appellees*

15.    Sriplaw, PA — *Counsel for Defendants/Appellees*

16.    Torres, Hon. Magistrate Judge Edwin G — *Magistrate Judge*

17.    Trechsel, Frank R., Esq. — *Counsel for Defendants/Appellees*

18.    Weinberger, Joseph — *President and Owner of Lil' Joe Records, Inc.*

19.    Wolfe Law Miami, P.A. — *Counsel for Plaintiff/Appellant*

20.    Wolfe, Richard, Esq. — *Counsel for Plaintiff/Appellant*

21.    Wong Won, Anissa — *Defendant/Appellee*

22.    Wong Won, Christopher, Jr. — *Defendant/Appellee*

23.    Wong Won, Roderick —*Defendant/Appellee*

Lil' Joe Records, Inc., pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.101 through 26.1-3, hereby discloses that it has no parent corporation and no publicly-held companies hold 10% or more of its stock, and further that:

Joseph Weinberger is an individual.

Lil' Joe Records, Inc., is a Florida Corporation.

/s/ Elliot B. Kula
Elliot B. Kula

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ....................................................C-1

TABLE OF CONTENTS ..........................................................................................i

TABLE OF CITATIONS ....................................................................................... iii

SUMMARY OF REPLY ARGUMENT ....................................................................1

ARGUMENT .............................................................................................................3

    I.    THE DEFENDANTS' TERMINATION RIGHTS
    WERE TRANSFERRED TO THE BANKRUPTCY
    ESTATE. ........................................................................................3

        A.    Section 203(b)(5) Exempts Rights Arising Under
        Federal Bankruptcy Law from Termination. ...........................3

        B.    Attempts to Resist the Plain Language of the
        Copyright Act and Bankruptcy Code Should be
        Rejected.....................................................................................7

    II.    LIL' JOE WAS ENTITLED TO JUDGMENT AS A
    MATTER OF LAW BECAUSE THE 1990
    AGREEMENT VESTED OWNERSHIP IN THE
    COPYRIGHTS WITH LUKE RECORDS. .......................................17

        A.    The Plain Language of the 1990 Agreement
        Vested Initial Ownership of the Copyrights in
        Luke Records. .........................................................................17

        B.    The Trial Evidence Confirmed Defendants Were
        Artists for Hire. .......................................................................19

        C.    The 1990 Agreement Was Not a Valid Transfer of
        Copyrights Because It Did Not Reference Any
        Alleged Prior Oral Agreements. ..............................................21

i

## TABLE OF CONTENTS
### (Continued)

**Page**

     D.    The Termination Notice Was Ineffective as to All
Other Possible Grants of Copyrights. ......................................23

CONCLUSION ..........................................................................................25

CERTIFICATE OF COMPLIANCE ......................................................26

CERTIFICATE OF SERVICE ...............................................................26

# TABLE OF CITATIONS

**Page**

## *Cases*

*Adinolfe v. United Techs. Corp.*,
   768 F.3d 1161 (11th Cir. 2014) ...........................................................19

*Brooks v. Bates*,
   781 F. Supp. 202 (S.D.N.Y. 1991) .......................................................9

*Crandon v. United States*,
   494 U.S. 152 (1990) ...........................................................................8

*Dolan v. U.S. Postal Serv.*,
   546 U.S. 481 (2006) ...........................................................................8

*Duval Motors Co. v. Rogers*,
   73 So. 3d 261 (Fla. 1st DCA 2011) ....................................................22

*FutureSource LLC v. Reuters Ltd.*,
   312 F.3d 281 (7th Cir. 2002) .............................................................15

*In re Allen*,
   226 B.R. 857 (Bankr. N.D. Ill. 1998) ................................................14

*In re Alvarez*,
   224 F.3d 1273 (11th Cir. 2000) .................................................. 12, 13

*In re Aneco Elec. Const., Inc.*,
   377 B.R. 338 (Bankr. M.D. Fla. 2006) ..............................................16

*In re Bracewell*,
   454 F.3d 1234 (11th Cir. 2006) .........................................................14

*In re Carlton*,
   309 B.R. 67 (Bankr. S.D. Fla. 2004) .......................................... 12, 13

*In re Dittmar*,
   618 F.3d 1199 (10th Cir. 2010) .........................................................12

## TABLE OF CITATIONS
(Continued)

**Page**

*In re Eveleth Mines, LLC.*,
  312 B.R. 634 (Bankr. D. Minn. 2004) ...................................................16

*In re Glick*,
  568 B.R. 634 (Bankr. N.D. Ill. 2017) ...................................................9

*In re Neuton*,
  922 F.2d 1379 (9th Cir. 1990) .................................................... 14, 15

*In re TE Holdcorp, LLC*,
  No. 22-1807, 2023 WL 418059 (3d Cir. Jan. 26, 2023).....................................15

*In re Wick*,
  276 F.3d 412 (8th Cir. 2002) .................................................14

*In re Yeary*,
  55 F.3d 504 (10th Cir. 1995) .................................................12

*Julmist v. Prime Ins. Co.*,
  92 F.4th 1008 (11th Cir. 2024) ..........................................22

*Korman v. HBC Florida, Inc.*,
  182 F.3d 1291 (11th Cir. 1999) .........................................5

*Kuehner v. Irving Tr. Co.*,
  299 U.S. 445 (1937)..........................................10

*Lil' Joe Records, Inc. v. Ross*,
  752 F. Supp. 3d 1287 (S.D. Fla. 2024) ...........................................15

*Lyrick Studios, Inc. v. Big Idea Productions, Inc.*,
  420 F.3d 388 (5th Cir. 2005) ...........................................21

*Mills Music, Inc. v. Snyder*,
  469 U.S. 153 (1985)......................................... 10, 11

*Nutradose Labs, LLC v. Bio Dose Pharma, LLC*,
  710 F. Supp. 3d 1200 (S.D. Fla. 2024) ...........................................17

iv

# TABLE OF CITATIONS
## (Continued)

**Page**

*Pipkins v. City of Hoover, Alabama*,
    134 F.4th 1163 (11th Cir. 2025) ...........................................................................18

*Rose v. Steigleman*,
    32 So. 3d 644 (Fla. 1st DCA 2010) ....................................................................22

*Radio Televisión Española S.A. v. New World Ent., Ltd.*,
    183 F.3d 922 (9th Cir. 1999) ....................................................................... 21, 22

*Sec'y, U.S. Dep't of Labor v. Preston*,
    873 F.3d 877 (11th Cir. 2017) ...............................................................................3

*Segal v. Rochelle*,
    382 U.S. 375 (1966)...............................................................................................15

*Taylor Corp. v. Four Seasons Greetings, LLC*,
    403 F.3d 958 (8th Cir. 2005) ............................................................................9, 10

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009)...............................................................................................16

*U.S. v. Whiting Pools, Inc.*,
    462 U.S. 198 (1983)...............................................................................................15

*Wright v. Union Cent. Life Ins. Co.*,
    304 U.S. 502 (1938)...................................................................................... 5, 6, 9, 10

*Yee v. City of Escondido*,
    503 U.S. 519 (1992)................................................................................................3

### *Statutes*

11 U.S.C. § 101 (2024) ...........................................................................................9, 12

11 U.S.C. § 363 (2024) ...........................................................................................4, 16

11 U.S.C. § 541 (2024) ..................................................................................... passim

## TABLE OF CITATIONS
### (Continued)

**<u>Page</u>**

11 U.S.C. § 1141 (2024) ........................................................................16

17 U.S.C. § 201 (2024) ................................................................... passim

17 U.S.C. § 203 (2024) ................................................................... passim

### *Regulations*

37 C.F.R. § 201.10(b)(2)(iii), (v) ...........................................................24

37 C.F.R. § 201.10(b)(3) .........................................................................24

37 C.F.R. § 201.10(e)(1) .........................................................................24

### *Other*

Merriam-Webster.com, 2025, https://www.merriam-
    webster.com/dictionary/notwithstanding  (last visited July 24, 2025) .................7

vi

## SUMMARY OF REPLY ARGUMENT

### TERMINATION RIGHTS
### WERE INCLUDED IN THE BANKRUPTCY ESTATES

Defendants ignore § 203(b)(5) of the Copyright Act, which exempts rights arising under federal bankruptcy law from termination. Lil' Joe's ownership rights arise from federal court orders under the Bankruptcy Code—not from grants under the Copyright Act—making them "rights arising under [other] Federal law" that § 203(b)(5) expressly exempts from termination. The bankruptcy court's Confirmation Order transferred Defendants' copyrights "free and clear of any interest in such property" under 11 U.S.C. § 363, and 11 U.S.C. § 541(c)(1)(A) provides that bankruptcy estate property transfers are effective "notwithstanding any provision in ... nonbankruptcy law ... that restricts or conditions transfer."

Defendants' arguments that § 203 rights are "inalienable" and "personal" fail because:

1) they ignore § 203(b)(5)'s federal law exemption;

2) bankruptcy transfers are involuntary and occur by operation of law, they are not "agreements to the contrary" under § 203(a)(5);

3) termination rights are inheritable and transferable, unlike truly personal rights; and

4) Defendants consented to the "free and clear" transfer during bankruptcy.

Summary judgment should be reversed and judgment entered in Lil' Joe's favor on remand.

1

## THE 1990 AGREEMENT'S PLAIN TERMS
## DID NOT TRANSFER THE COPYRIGHTS

Defendants attempt to shield their termination notice from scrutiny by claiming that the 1990 Agreement memorialized a prior oral transfer, but the agreement says no such thing. Section 204(a) of the Copyright Act requires a writing that either effects or confirms a transfer, and courts make clear that such a writing must at least refer to the prior oral grant. The 1990 Agreement is silent on any past deal and includes an integration clause disclaiming all prior understandings.

Even if it were operative, the 1990 Agreement vests ownership "from the inception of creation" in the label (in this case, Luke Records)—a hallmark of a work-made-for-hire arrangement not subject to termination under § 203.

The jury's verdict was legally unsustainable, and the district court erred in denying judgment as a matter of law.

ARGUMENT

## I.  THE DEFENDANTS' TERMINATION RIGHTS WERE TRANSFERRED TO THE BANKRUPTCY ESTATE.

### A.  Section 203(b)(5) Exempts Rights Arising Under Federal Bankruptcy Law from Termination.

The Copyright Act exempts Lil' Joe's ownership rights from termination. Defendants entirely ignore the most compelling—and crucial—textual analytic in this case.[1]  Section 203(b)(5) of the Copyright Act provides that termination "affects only those rights covered by grants that arise under [the Copyright Act], *and in no way affects* rights arising under any other Federal, State, or foreign laws." 17 U.S.C. § 203(b)(5) (emphasis added).  That means other Federal laws—like the Federal Bankruptcy Code—trump rights under the Copyright Act.

Lil' Joe's ownership rights arise not from any grant under the Copyright Act, but from federal court orders issued under the Bankruptcy Code—quintessential "rights arising under [other] Federal law."  17 U.S.C. § 203(b)(5).  The Confirmation Order transferred the copyrights to Lil' Joe "pursuant to the terms of the Plan and the Letter of Intent" and 11 U.S.C. § 363 and expressly included these specific rights:

---

[1] Defendants claim that certain components of arguments by Lil' Joe were not preserved.  *See* Appellees' Answer Brief ("AB") at 16, 28, 36-37, 52.  Defendants misunderstand that when an issue has been "properly presented, a party can make any argument in support of that [issue]; parties are not limited to the precise arguments they made below."  *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992); *accord Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 n.5 (11th Cir. 2017).

3

- "The sale of the Debtors' assets to Joseph Weinberger and Lil' Joe Records, Inc. (together, 'Weinberger') pursuant to the terms of the Plan and the Letter of Intent is in the best interest of each of the Debtors' estates. The Letter of Intent and all transactions contemplated thereby are a necessary and integral part of the Plan."

- "Weinberger and Campbell are good faith purchasers as that term is used in 11 U.S.C. § 363(m) and are entitled to all of the protection of a good faith purchaser pursuant thereto."

And, importantly:

- "All the assets to be transferred under the Plan, the Letter of Intent or this Order shall, except as otherwise expressly provided for in the Plan, the Letter of Intent or the Amendment, be transferred free and clear of any interest in such property of an entity other than the Debtors."

[ECF 32-3 at 2-4, 10-13]. These federally-created ownership rights are precisely what § 203(b)(5) exempts from termination.

Defendants' brief contains no response to this dispositive statutory language, despite Lil' Joe raising it prominently in its Opening Brief of Appellant Lil' Joe Records, Inc. ("OB"). This silence is telling: There is no plausible interpretation of § 203(b)(5) that would subject bankruptcy-created ownership rights to subsequent termination under the Copyright Act without cutting against the plain language of the provision and the rights transferred in Bankruptcy.

The Copyright Act itself contemplates and authorizes *involuntary* transfers of an author's "rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright" through bankruptcy. Section 201(e) provides:

> When an individual author's ownership of a copyright, *or of any of the exclusive rights under a copyright*, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or *exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright*, shall be given effect under this title, *except as provided under title 11 [the Bankruptcy Code]*.

17 U.S.C. § 201(e) (emphasis added). This express exception for bankruptcy proceedings demonstrates that Congress intended the Bankruptcy Code to operate notwithstanding other Copyright Act provisions.[2]

The statutory structure makes perfect sense. Congress intended § 203 to allow authors to recapture rights from publishers and record labels who obtained them through private Copyright Act transfers before their value was truly known. *See Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1296 (11th Cir. 1999). But Congress also recognized that federal law creates its own system of rights—through bankruptcy, tax collection, court judgments, and other federal processes. *See Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 518 (1938). Together, § 203(b)(5) and § 201(e)

---

[2] On its face, § 203(b)(5) applies only to the voluntary transfers—the "exclusive or nonexclusive grant[s] of a transfer or license of copyright or of any right under a copyright, *executed by the author*." 17 U.S.C.A. § 203. There's a reading of the Copyright Act in which you can conclude that termination rights only attach to an intentional transfer by a copyright author and those rights simply do not exist in the event of an involuntary transfer such as bankruptcy. 17 U.S.C. § 201(e).

ensure that authors cannot use termination rights to unwind the carefully orchestrated federal systems that depend on finality of legal transfers.

The Bankruptcy Code reinforces this conclusion through multiple overlapping provisions that demonstrate Congressional intent (conveyed by text) to make bankruptcy's asset-gathering function supreme over other federal transfer restrictions. Indeed, "Property rights do not gain any absolute inviolability in the bankruptcy court because created and protected by state [or other] law. Most property rights are so created and protected. But if Congress is acting within its bankruptcy power, it may authorize the bankruptcy court to affect these property rights, provided the limitations of the due process clause are observed." *Wright*, 304 U.S. at 518. Most on point, § 541(c)(1)(A) provides that "an interest of the debtor in property becomes property of the estate ... *notwithstanding any provision in any provision in an agreement, transfer instrument, or applicable nonbankruptcy law* ... that restricts or conditions transfer of such interest by the debtor." 11 U.S.C. § 541(c)(1)(A) (emphasis added). In short, all interests means all interests—including a debtor's termination right.

This provision directly contradicts Defendants' core argument. Defendants themselves admit that "the Copyright Act is the 'non-bankruptcy' law that wholly restricts the transfer of § 203 termination rights." AB:27. Having made this concession, their position becomes untenable under § 541(c)(1)(A). Congress explicitly commanded that such "nonbankruptcy law" restrictions do not prevent a debtor's interest from becoming estate property. "Notwithstanding" means "in spite of" or "despite"—Congress could not have been clearer that transfer restrictions in

6

other federal statutes yield to bankruptcy's comprehensive asset-gathering mandate. *See* Merriam-Webster.com, 2025, https://www.merriam-webster.com/dictionary/notwithstanding  (last visited July 24, 2025).

### B. Attempts to Resist the Plain Language of the Copyright Act and Bankruptcy Code Should be Rejected.

Defendants attempt a few workarounds to the clear statutory interplay but do so by marshaling *extratextual* support.  First, they label § 203 termination rights "inalienable."  Second, they argue that § 203 termination rights—rights arising out of and intertwined with property—are "personal rights" and thus excluded from the grasp of § 541(c)(1)(A).  Neither passes muster, and the several arguments purportedly to support the workarounds are addressed in turn.

### RE: DEFENDANTS' ARGUMENT THAT § 203 RIGHTS ARE "INALIENABLE" (AT AB 10-16)

The Defendants rely on § 203(a)(5)'s proviso that "[t]ermination of the grant may be effected notwithstanding any agreement to the contrary, including an agreement to make a will or to make any future grant" to argue that the provision "provides an inalienable termination right" and "provides no exceptions."  AB:10 (citing 17 U.S.C.A. § 203(a)(5)).  That reliance is misplaced for several reasons.

First, § 201(d)(2) explicitly states that all exclusive rights attached to a copyright can be transferred "in whole or in part by any means of conveyance or by operation of law" as follows:

> Any of the exclusive rights comprised in a copyright … may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to

all of the protection and remedies accorded to the copyright owner by
this title.

17 U.S.C. § 201(d)(2).  That establishes the *alienability* of all "exclusive rights … in
a copyright." *Id*.

Second, Congress conditioned the termination provision in § 203(a) on
§ 203(b)(5) which, as stated above, limits the applicability of § 203(a)(5) as follows:

(5) Termination of a grant under this section affects only those rights
covered by the grants that arise under this title, and in no way affects
rights arising under any other Federal, State, or foreign laws.

17 U.S.C. § 203(b)(5).  That establishes the hierarchy: Federal Bankruptcy Code,
then the Copyright Act.

The Defendants' conclusion that "Lil Joe's claim that [Defendants] lost their
§ 203 rights via agreements reached in bankruptcy or settlement is thus foreclosed
by the text" is based on only half the actual text.  AB:11.  If the Defendants' § 203
termination rights were included in their bankruptcy estate as permissible by
§ 201(d)(2), then by operation of § 203(b)(5)'s text, those termination rights "in no
way affect[]" the rights under the Bankruptcy Code.  17 U.S.C. § 203(b)(5).

Of course, to determine the proper meaning of the Copyright Act, this Court
must evaluate "the whole statutory text, considering the purpose and context of the
statute, and consult[ ] any precedents or authorities that inform the analysis." *Dolan
v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).  "In determining the meaning of the
statute," the Court must "look not only to the particular statutory language, but to
the design of the statute as a whole and to its object and policy." *Crandon v. United
States*, 494 U.S. 152, 158 (1990).  That means the Court cannot engage in the

8

Defendants' one-eyed open analysis: Section 203(a)(5)'s proviso must be evaluated in context with §§ 203(b)(5) and 201(e).

Defendants' insistence that the transfer of the 2 Live Crew copyrights through the bankruptcy estate represents just another "agreement to the contrary that the Act expressly states cannot deprive an artist of their § 203 right" is equally misjudged. AB:11. Recall, § 201(e) provides that the transfer of copyrights "under title 11" (the Bankruptcy Code) are *involuntary transfers*—not "agreements to the contrary"— "voluntarily [entered into] by that individual author." *Compare* 17 U.S.C. § 201(e) *with* 17 U.S.C. § 203(a)(5). There's a clear difference between an author voluntarily entering into an arms-length transaction for the grant of their copyrights and the distribution of assets that are court-approved in a bankruptcy proceeding  by operation of law [ECF 32-3]—the latter of which Congress did not intend to fall within the realm of § 203. *See Wright*, 304 U.S. at 518.

Indeed, the Bankruptcy Code's definition of "transfer" is consistent with the Copyright Act in that it defines "transfer" broadly to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). "The essence of a transfer is the relinquishment of a valuable property right," like a copyright. *In re Glick*, 568 B.R. 634, 672 (Bankr. N.D. Ill. 2017) (citation omitted). Based on those definitions, courts have concluded that the assignment of copyrights through bankruptcy from one party to another is indeed a "transfer … by operation of law." *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 963-64 (8th Cir. 2005). *And see Brooks v. Bates*, 781 F. Supp. 202, 205 (S.D.N.Y. 1991). While

9

those transfers may be effectuated in documents that resemble standard "agreements," and are reviewed under legal standards that apply to standard contracts (*see* AB:15), they operate fundamentally different.

To sum it up, the legislative code, history, and case law confirm that bankruptcy transfers are not considered "agreements to the contrary" under § 203(a)(5) because they are not voluntary agreements, but rather involuntary transfers by operation of law conducted under a statutory system designed for the distribution of assets. *See Kuehner v. Irving Tr. Co.*, 299 U.S. 445, 451 (1937) ("The short answer is that the object of bankruptcy laws is the equitable distribution of the debtor's assets amongst his creditors"); *Wright*, 304 U.S. at 518; *Taylor Corp.*, 403 F.3d at 963.

*Mills Music, Inc. v. Snyder*, 469 U.S. 153 (1985), does not alter the analysis. *Mills* involved a 1929 bankruptcy that occurred decades before the 1976 Copyright Act created termination rights. *Mills Music, Inc.*, 469 U.S. at 156-57. The Supreme Court was analyzing renewal rights under the 1909 Act—an entirely different legal framework that predated § 203 by nearly fifty years and lacked the complex statutory interplay discussed above.

When the *Mills* bankruptcy occurred, the modern termination provisions (§ 203), the federal law exemption (§ 203(b)(5)), the involuntary transfer authorization (§ 201(e)), and the bankruptcy override provision (§ 541(c)(1)(A)) simply did not exist. The Supreme Court could not have considered how these provisions interact with bankruptcy law because Congress had not yet enacted them. *Mills* thus provides no guidance on the statutory scheme that governs this case.

Moreover, to the extent that the termination language in § 304 of the 1976 Act (operative when *Mills* was decided) is analogous to the operative statutory language here, *Mills* features an independent event that actually supports Lil' Joe's position. In *Mills*, the initial term for the copyright was conveyed through bankruptcy but, because of the statutory scheme relevant at the time, the publisher (and purchaser at bankruptcy) "needed the cooperation of Snyder" to acquire renewal rights to the copyright. *Id*. at 157.[3]  Thus, the author and publisher voluntarily entered into a separate deal; a deal separate and apart from the transfer in bankruptcy. *Id*. at 158-159.  Consequently, the termination rights in § 304(c) gave the author's "widow and surviving son … a right to terminate the grant to Mills of rights in the *renewal copyright*." *Id*. at 161-162 (emphasis added).

Those are not our circumstances.

### RE: DEFENDANTS' ARGUMENT THAT § 203 RIGHTS ARE "PERSONAL RIGHTS" RATHER THAN PROPERTY INTERESTS (AT AB 16-26)

Defendants' insistence that § 203 termination rights are somehow "personal" and not property interests ignores the plain language of both the Copyright Act and the Bankruptcy Code.  *See* AB:16-21.  It also disregards the extensive case law holding that contingent, unvested, and even novel interests—including intellectual property rights—constitute "property of the estate" under 11 U.S.C. § 541.  These

---

[3] Moreover, it was the "publishing company" that the author "partly owned" that filed for bankruptcy, not the individual author himself. *Id*. at 156-157.  Here, two of the authors (Campbell and Ross) personally filed for bankruptcy and it is their personal bankruptcy that divested them of their termination rights.

are rights that arise from property—classifying them as personal rights akin to spousal maintenance is more than a stretch.

As shown in the Opening Brief, § 541(a)(1) of the Bankruptcy Code casts a deliberately broad net, encompassing "all legal or equitable interests of the debtor in property as of the commencement of the case," including those that are "future, nonpossessory, contingent, speculative, and derivative." *In re Dittmar*, 618 F.3d 1199, 1207 (10th Cir. 2010). "Even contingent interests that may or may not vest for years at the time of their creation are not necessarily excluded." *Id.* (citing *In re Yeary*, 55 F.3d 504, 505, 508–09 (10th Cir. 1995)). *Accord In re Alvarez*, 224 F.3d 1273, 1279 (11th Cir. 2000); *In re Carlton*, 309 B.R. 67, 74 (Bankr. S.D. Fla. 2004). Termination rights under § 203 are just that: legal interests in copyrights—defined property rights under 17 U.S.C. § 101—which are plainly covered by § 541 unless expressly excluded. And, as the Defendants fail to mention, they are not excluded.

To the contrary, Congress expressly excluded certain rights from the estate in § 541(b), and termination rights are not among them. Nor does § 203 contain any language suggesting that termination rights are immune from creditor process or exempt from federal bankruptcy law. Instead, § 203(a)(5) provides only that "termination … may be effected notwithstanding any agreement to the contrary," but, as already proven, a bankruptcy transfer is not an agreement.

Defendants' effort to analogize termination rights to spousal maintenance (AB:20) only underscores the illogic in their reasoning. Unlike alimony, which is awarded as support and typically not inheritable or transferable, termination rights under § 203 are freely inheritable and transferable—exercisable by heirs or even

12

executors, and divisible among them by statutory formula. *See* 17 U.S.C. § 203(a)(2), (3).  That statutory scheme betrays any notion that termination rights are "inherently personal" in the way Defendants claim.

And Defendants' attempt to evade bankruptcy law by drawing a distinction between a "property interest" and the "personal ability to exercise a right to obtain a property interest" is as clever as it is empty.  AB:17.  Under their logic, a contingent interest in a valuable copyright—expressly recognized by Congress, inheritable, alienable upon death, and statutorily timed to ripen into ownership—isn't part of the bankruptcy estate because the debtor must *personally* do something (serve a notice) to realize it.  But of course, bankruptcy estates routinely include all manner of contingent rights that require post-petition action: options, causes of action, even rights to tax refunds.  *See, e.g., In re Alvarez*, 224 F.3d at 1279; *In re Carlton*, 309 B.R. at 74.

The Copyright Act's own language confirms that termination interests are property rights, not the personal rights Defendants claim.  Section 203(a)(2)(A) and (B) expressly state that an author's heirs "**own** the author's entire termination interest," and § 203(a)(4) requires that termination notices be signed by "**owners** of termination interests."  17 U.S.C. § 203(a)(2)(A)-(B), (a)(4) (emphasis added).  Congress's repeated use of "own" and "owners" language demonstrates that termination interests are property interests capable of ownership—precisely the type of interest that § 541(a)(1) brings into the bankruptcy estate.  If termination rights were truly personal rights like spousal maintenance, they could not be "owned" by multiple parties or transferred to heirs.  Yet here, the statute explicitly provides for

13

fractional ownership among surviving family members and allows heirs to exercise these rights—as Ross's and Wong Won's heirs are attempting to do in this very case.

The so-called "nonwaivability" clause in § 203(a)(5) simply prevents an author from contractually surrendering their right to terminate. It says nothing about whether that right passes by operation of law through bankruptcy—where the debtors (like Campbell and Ross) trade property rights (including future and contingent ones) for a discharge and fresh start.

### RE: DEFENDANTS' ARGUMENT THAT § 203 RIGHTS HAD NOT "VESTED" AT THE TIME OF BANKRUPTCY (AT AB 21-26)

Defendants' suggestion that § 203 termination rights do not "vest" until years later (and are thus somehow not estate property) misapprehends bankruptcy law. AB:21-26. Defendants' § 203 termination rights existed at the time of the transfer of the copyrights through bankruptcy—there's no question about that. While they may not have been exercisable, they existed, much like any option to cancel a contract that materializes after the fact. *See In re Bracewell*, 454 F.3d 1234, 1246 (11th Cir. 2006) (differentiating whether an asset is properly included in the bankruptcy estate based on when law was passed). Courts uniformly hold that unvested rights such as those—including options, tax refunds, and even personal injury claims—enter the estate so long as they existed, however contingently, at the time of the bankruptcy filing. *See Id.; In re Allen*, 226 B.R. 857, 866 (Bankr. N.D. Ill. 1998); *In re Wick*, 276 F.3d 412, 415 (8th Cir. 2002); *see also* OB:28-30.

As the Ninth Circuit commented in *In re Neuton*, 922 F.2d 1379 (9th Cir. 1990), citing to United States Supreme Court precedent:

> Whether a debtor's contingent interests were acquired by the bankrupt estate was a thorny issue under the old Bankruptcy Act. In a landmark decision which largely inspired the new Code, the Supreme Court held that "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."

*Id.* at 1382 (citing to *Segal v. Rochelle*, 382 U.S. 375, 379 (1966)). That's now been the law for nearly sixty years. *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983) ("Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate.").

### RE: DEFENDANTS' ARGUMENT THAT TERMINATION RIGHTS WERE "NEVER IDENTIFIED" IN THE BANKRUPTCY ESTATE (AT AB 27-32)

Lastly, the Defendants' argument that the § 203 termination rights were "excluded" from bankruptcy because they "were never identified as part of any bankruptcy estate" is both circular and backwards. AB:27-32. Here, Campbell voluntarily filed the Chapter 11 bankruptcy, and neither Campbell, Wong Won, nor Ross filed claims asserting ownership of termination rights or objected to the asset sale transferring copyrights "free and clear of any and all liens, claims, encumbrances, charges, setoffs or recoupments of any kind." *Lil' Joe Records, Inc. v. Ross*, 752 F. Supp. 3d 1287, 1293 (S.D. Fla. 2024) (quoting [ECF No. 1-3 at 3]). Under *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002), this "lack of objection [and Defendants had notice] counts as consent." *And see In re TE Holdcorp, LLC*, No. 22-1807, 2023 WL 418059, at *3 (3d Cir. Jan. 26, 2023) ("Notice and lack of objection constitutes consent to bankruptcy order's terms.").

15

This consent to the bankruptcy courts terms satisfied 11 U.S.C. § 363(f)(2), which permits sale of estate property "free and clear of any interest" where "such entity consents." *And see* 11 U.S.C. § 1141. Even if termination rights were not automatically included in the estate under § 541, Defendants' consent cured any potential defect and authorized their transfer free of any other interest in the property. The bankruptcy court specifically found the sale transferred assets free of all encumbrances, and Defendants cannot now collaterally attack this ruling. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

"By affording clear title to purchasers from the estate, sales under § 363(f) make the estate's assets more attractive in the market. This, in turn, can 'maximize the value of the asset[s], and thus enhance the payout made to creditors' on a full administration of the estate." *In re Eveleth Mines, LLC.*, 312 B.R. 634, 649–50 (Bankr. D. Minn. 2004). *See accord In re Aneco Elec. Const., Inc.*, 377 B.R. 338, 342 (Bankr. M.D. Fla. 2006).

The Defendants' claim that the termination rights had to be "expressly discussed" mistakes the legal presumption. AB:30. When property is sold "free and clear," everything transfers by default unless specifically excepted. *See In re Eveleth Mines, LLC.*, 312 B.R. at 649–50; *In re Aneco Elec. Const., Inc.*, 377 B.R. at 342. The burden is on Defendants to identify an exception that carved termination rights *out* of the transfer, not on Lil' Joe to prove they were carved *in*. Defendants' failure to object or seek such an exception during the bankruptcy proceedings forecloses their current claim.

Having participated in and acquiesced to bankruptcy proceedings that transferred copyrights "free and clear," Defendants are estopped from claiming they retained rights the bankruptcy court transferred with their knowledge and non-objection. *See Nutradose Labs, LLC v. Bio Dose Pharma, LLC*, 710 F. Supp. 3d 1200, 1228 (S.D. Fla. 2024).

#    #    #

Termination rights are legal interests in property under federal law. They pass into the bankruptcy estate by operation of § 541(a), and the Copyright Act's nonwaiver clause does not insulate them from that reality.

The district court erred in ruling otherwise.

## II.    LIL' JOE WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THE 1990 AGREEMENT VESTED OWNERSHIP IN THE COPYRIGHTS WITH LUKE RECORDS.

### A.    The Plain Language of the 1990 Agreement Vested Initial Ownership of the Copyrights in Luke Records.

Lil' Joe argued in its Opening Brief that the 1990 Agreement's plain and unambiguous language establishes that Luke Records owned the copyrights in the 2 Live Crew recordings "from the inception of their creation." OB:34-35, 41-43. Lil' Joe maintained that this language—mirroring work-for-hire arrangements upheld in cases like *Warren v. Fox Family Worldwide, Inc.*—established that 2 Live Crew were employees and their recordings were works made for hire not subject to termination under § 203 of the Copyright Act. The 1990 Agreement did not effectuate a post hoc transfer of ownership, but confirmed initial ownership in Luke Records, thus foreclosing any § 203 termination rights in the first place.

17

Consequently, the district court erred in letting the termination notice stand when the 2 Live Crew members never owned the copyrights to begin with.

The Defendants' only response to this argument is that it was not made below. AB:36-37. Well, that's wrong. Lil' Joe's argument that the 1990 Agreement expressly vested ownership of the copyrights in Luke Records "from inception," thereby foreclosing any later termination right, was squarely raised in its motion for judgment as a matter of law:

> 5) If the 1990 Agreement is the operative agreement, each of the members of 2 Live Crew … "expressly agreed in paragraph 2(d) that Luke Records owns the *2 Live Crew* Copyrights" … and that such ownership "shall from the inception of their creation, be entirely and forever the property of the Company…", in other words, they were works "made for hire"[.]

[ECF 251 at 10].

That argument was renewed by Lil' Joe in its renewed motion for judgment as a matter of law in which Lil' Joe discussed in detail the 1990 Agreement's plain and unambiguous omission of "transfer", "assign," or "grant" and instead dictates that Luke Records "shall own all master recordings" and other work produced by the Artist. [ECF 284 at 6]. The discussion on the effect of the 1990 Agreement served as an inflection point for many of Lil' Joe's arguments. [ECF 284 at 25-27].

Defendants also claim that the argument is inconsistent with other arguments made by Lil' Joe below. AB: 36-37. Certainly, a party "can plead in the alternative even if her claims are inconsistent." *Pipkins v. City of Hoover, Alabama*, 134 F.4th 1163, 1174 (11th Cir. 2025). Lil' Joe squarely argued this theory in the alternative— specifically, that if the 1990 Agreement was deemed operative (which Lil' Joe

18

disputed), then the Agreement's own plain language made clear that the copyrights belonged to Luke Records "from the inception of their creation," leaving nothing for the band to terminate under § 203. *See, e.g., Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) ("It is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability.")

To be clear, preservation was satisfied because the district court was on full notice of this argument, and the record shows it was litigated throughout. The point remains: If the 1990 Agreement was operative—as Defendants themselves contend—then its unambiguous language confirms that Luke Records owned the copyrights "from the inception of their creation," crystalizing the Defendants' work as "made-for-hire" and leaving the Defendants with no rights to terminate.

## B. The Trial Evidence Confirmed Defendants Were Artists for Hire.

The trial evidence conclusively established that Defendants were employees creating works for hire, making the Subject Albums ineligible for termination under 17 U.S.C. § 203. The Defendants' attempt to overlook the plain language of the 1990 Agreement (discussed in OB:33-40) should be rejected. As to the other evidence at trial, the Defendants recharacterize it, but their arguments cannot overcome the direct admissions, testimony (of Luke Records' former accountant and attorneys), and unrebutted contemporaneous tax and business records which featured at trial.

Defendants claim Campbell testified that Luke Records had no "right of control" over 2 Live Crew and that they had "full creative control." AB:41. But this

mischaracterizes Campbell's testimony. Campbell unequivocally admitted, among other things (*see* OB:38-40), that he stated under penalty of perjury in bankruptcy that he was an employee receiving a salary. When asked directly: "And do you recall that you stated in the bankruptcy court, under penalties of perjury, that you were paid a salary? A. Yes, sir." [ECF 277 at 122].

Likewise, the attempt to dismiss the payroll evidence showing the 2 Live Crew to be employees as "per diem" fails because the systematic employment and tax treatment proves otherwise. AB:42. The checks came from Paychex, which "only issues payroll checks," with taxes deducted showing irregular amounts like "$424.93" rather than round numbers, because "they deducted payroll taxes" and made "corresponding check[s] to NCNB" for payroll taxes. [ECF 277 at 170]. An IRS audit confirmed this employment treatment, resulting in "a no-change letter finding that the tax return saying that they were employees was true and correct." [ECF 277 at 166].

Finally, the Answer Brief's argument that Campbell couldn't be an employee because he owned the label is contradicted by his own bankruptcy admission that he was a salaried employee. *Compare* AB:44 *with* [ECF 277 at 122].

At bottom, Defendants cannot overcome Campbell's admission that he was a salaried employee, his testimony about the "clear understanding that the company would own the copyrights," (*see* OB:38-40) his confirmation that the label owned the copyrights throughout the relevant period, and the systematic payroll treatment confirmed by the IRS. The evidence—including the terms of the 1990 Agreement—

20

uniformly establishes that 2 Live Crew were employees creating works for hire, which are excluded from termination rights under § 203.

### C. The 1990 Agreement Was Not a Valid Transfer of Copyrights Because It Did Not Reference Any Alleged Prior Oral Agreements.

Defendants maintain, despite all evidence to the contrary, that the 1990 Agreement "memorialized" a prior oral agreement to transfer copyrights and therefore satisfies § 204(a).   AB:32.   But that argument misstates the law, mischaracterizes the record, and ignores the plain language of the 1990 Agreement.

Recall, § 204(a) requires a signed writing that either effects or confirms a transfer of copyright.  It must refer to the existence of the prior deal and contain enough detail about the transfer to satisfy the statute. *See Lyrick Studios, Inc. v. Big Idea Productions, Inc.*, 420 F.3d 388, 394-95 (5th Cir. 2005); *Radio Televisión Española S.A. v. New World Ent., Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) (the writing must contain "at least some information about the deal itself").  A general statement of ownership without reference to any prior agreement does not suffice.  *Id*.

The 1990 Agreement fails this test because it is entirely silent about any prior oral agreement.  It does not mention earlier negotiations, does not refer to any previous grant, and makes no effort to link its terms to a prior transfer.  Defendants argue that *Radio Television Espanola S.A.*, 183 F.3d 922, supports their position because "no magic words" are required in a written memorialization under § 204(a). But *Radio Televisión* proves the opposite.

In *Radio Televisión*, the Ninth Circuit held that the alleged agreement (two faxes) failed to satisfy § 204(a) precisely because it "[did] not refer to the existence of any prior oral agreement" and "contain[ed] no information whatsoever about the deal itself." *Id.* at 927. The court stated that a post hoc writing must provide "at least some information about the deal itself" and rejected an after-the-fact affidavit that merely stated "there was an agreement" without describing its terms. *Id.* That is exactly the situation here: the 1990 Agreement contains no reference—none—to any prior oral agreement or its terms or a description of what is being transferred.

So, while no "magic words" are required, *some* words are. That's what *Lyrick* and *Radio Televisión* both held, and Defendants' cherry-picked quotations from cases that stand for propositions helpful to Lil' Joe do not change that.

Defendants try to sidestep the integration clause by claiming the oral agreement is not a "modification" of the 1990 Agreement. But the merger clause bars *any* claim that an earlier oral agreement has legal effect. Paragraph 16 of the 1990 Agreement is a classic merger clause—it states that "[t]his Agreement contains the entire understanding of the parties" and "supersedes all prior understandings and agreements." [ECF 250-1 at 22]. Under Florida law, such clauses extinguish any claim that a prior oral agreement was incorporated into the written contract. *See Duval Motors Co. v. Rogers*, 73 So. 3d 261, 265 (Fla. 1st DCA 2011). To the Defendants' point, "it is immaterial whether any prior representations sought to be excluded are oral or written; anything that does not constitute part of [the 1990 Agreement] is not part of the parties' agreement related to the contract." *Id.*

22

Finally, the idea that "all parties" testified that the 1990 Agreement was intended to memorialize a prior transfer is classic misdirection. Contract interpretation is a question of law, not witness belief. *See, e.g., Julmist v. Prime Ins. Co.*, 92 F.4th 1008, 1016 (11th Cir. 2024); *Rose v. Steigleman*, 32 So. 3d 644, 645 (Fla. 1st DCA 2010) ("A trial court's interpretation of a contract is a matter of law and is thus subject to de novo review."). And no party pointed to a single clause in the 1990 Agreement that refers to a prior deal.

The 1990 Agreement stands alone—and it fails. Because the 1990 Agreement does not reference or confirm any prior oral transfer, and because its own terms contain a merger clause disclaiming such earlier agreements, it cannot satisfy § 204(a). That makes it legally incapable of serving as the basis for a valid termination notice under § 203. The district court's failure to grant judgment on this ground is reversible error.

### D. The Termination Notice Was Ineffective as to All Other Possible Grants of Copyrights.

The merits of the argument remain unrefuted.[4] The termination notice was legally defective because it identified only the 1990 Agreement—a document that, by its own terms, contains no grant of any sound recording copyrights. It is undated, and lacks the statutory elements required to transfer ownership. The notice did not even mention the 1991 Agreements, which are the only written agreements that

---

[4] Lil' Joe expressly raised this ground in its motion for judgment as a matter of law under Rule 50(a) and renewed it post-trial under Rule 50(b). [ECF 251 at 4-7; ECF 284 at 3-5].

purported to convey sound recording copyrights. Nor did it reference the subsequent transfers in 1993, 1996, 2001, or 2003.[5]

A notice of termination under § 203 must contain a "clear identification" of the "date of execution of the grant being terminated" and a "brief statement reasonably identifying the grant." 37 C.F.R. § 201.10(b)(2)(iii), (v). Importantly, the regulations state that a "[c]lear identification ... requires a complete and unambiguous statement of facts in the notice itself, without incorporation by reference of information in other documents or records." 37 C.F.R. § 201.10(b)(3). Defendants' notice does not meet that standard.

The 1990 Agreement contains no copyright grant.[6] It supersedes prior agreements, is undated, and lacks the appropriate transfer language that appears in the 1991 Agreements. Even if the jury found the 1990 Agreement "operative," that does not cure the notice's failure to identify the actual grant of rights.

Nor can Defendants retreat to harmless error. The regulation's safe harbor is narrow: only "harmless" errors that do not "materially affect" the adequacy of the notice may be excused. 37 C.F.R. § 201.10(e)(1). Omitting the correct operative grant entirely is not harmless; it is fatal. The whole purpose of the identification requirement is to give the grantee "clear notice" of the rights being terminated. That standard was not satisfied here—and Defendants offer no precedent to the contrary.

---

[5] Recall, Two Live Crew's first album was recorded and released in 1986—before the 1990 Agreement was effective.

[6] Defendants appear to have no comment on the fact that Christopher Wong Won demanded from Luke Records monies he believed he was owed under the 1991 Agreement, not the 1990 Agreement. [ECF 276 at 19; ECF 252-28, 252-29].

Defendants offer no substantive justification for why the notice's failure to identify the 1991 Agreements—or any subsequent grants—should be excused. The record, the law, and the regulations all point in the same direction: the notice was invalid, and the termination ineffective.

## CONCLUSION

The Defendants have provided no reason why judgment should not be reversed with directions to enter summary judgment in Lil' Joe's favor on its claim for a declaration that 2 Live Crew members Ross and Campbell relinquished their termination rights during their respective bankruptcy proceedings. *Alternatively*, reversal with directions to enter judgment as a matter of law in Lil' Joe's favor is appropriate for the reasons argued in the Opening Brief and addressed herein.

Respectfully submitted,

<table>
<tr><td>Richard C. Wolfe</td><td>Elliot B. Kula</td></tr>
<tr><td>Florida Bar No. 355607</td><td>Florida Bar No. 003794</td></tr>
<tr><td>WOLFE LAW MIAMI, PA</td><td>KULA & ASSOCIATES, P.A.</td></tr>
<tr><td>175 SW 7th Street, Suite 2410</td><td>12000 Biscayne Boulevard, Suite 221</td></tr>
<tr><td>Miami, Florida 33130</td><td>Miami, Florida 33181</td></tr>
<tr><td>Telephone: (305) 384-7370</td><td>Telephone: (305) 354-3858</td></tr>
<tr><td>Facsimile: (305) 384-7371</td><td>Facsimile: (305) 354-3822</td></tr>
<tr><td>rwolfe@wolfelawmiami.com</td><td>eservice@kulalegal.com</td></tr>
<tr><td></td><td>elliot@kulalegal.com</td></tr>
<tr><td>By: /s/ Richard C. Wolfe</td><td></td></tr>
<tr><td>Richard C. Wolfe</td><td>By: /s/ Elliot B. Kula</td></tr>
<tr><td></td><td>Elliot B. Kula</td></tr>
</table>

*Counsel for Plaintiff/Appellant Lil' Joe Records, Inc.*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief uses Times New Roman 14-point typeface and contains <u>6,389</u> words.

<u>/s/ Elliot B. Kula</u>
Elliot B. Kula

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 29, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.  I also hereby certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ Elliot B. Kula</u>
Elliot B. Kula
